# United States Court of Appeals
## For the First Circuit

No. 10-1800

STEPHEN HARRON,

Plaintiff, Appellant,

BIG TIME, INC.,

Plaintiff,

v.

TOWN OF FRANKLIN; STEPHEN T. WILLIAMS, Chief of Police; JEFFREY
D. NOTTING, Town Administrator; CERTAIN OTHER OFFICIALS OF THE
TOWN OF FRANKLIN, BOTH INDIVIDUALLY AND IN THEIR OFFICIAL
CAPACITIES FOR THE TOWN OF FRANKLIN,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, <u>U.S. District Judge</u>]

Before

Boudin, Lipez, and Howard,
<u>Circuit Judges</u>.

Edward J. McCormick, III, with whom <u>McCormick & Maitland</u> was
on brief, for appellant.
Adam Simms, with whom <u>John J. Davis</u> and <u>Pierce, Davis &
Perritano, LLP</u> were on brief, for appellees.

October 31, 2011

**LIPEZ**, **Circuit Judge**.  Pursuant to 42 U.S.C. § 1983, Stephen Harron and Big Time, Inc. sued the Town of Franklin, Massachusetts (the "Town"), and several Town officials, claiming violations of the Equal Protection and Due Process Clauses of the United States Constitution, for allegedly forcing out of business a tavern leased and operated by them.  The district court dismissed the amended complaint for failure to state a claim upon which relief could be granted, and Harron now appeals.  We affirm.

**I.**

## A. Factual Background

To describe the factual background of this case, we take the facts as set forth in the amended complaint.

In early 2007, Harron entered into negotiations to lease a tavern located near the Franklin Town Hall from Repsac, Inc. and to arrange for the transfer of Repsac's liquor license to Harron. Harron spent the first five months of 2007 renovating the premises and securing various building permits and food-service licenses from the Town in order to open and operate his tavern.  However, Harron was unsuccessful in securing a liquor license for the tavern; the transfer of Repsac's license to Harron was not approved by the Town, and no new license was issued.  Undeterred, Harron opened the tavern in May 2007, and started serving liquor without a license.  Over the ensuing months, he was assured by unidentified

persons associated with the Town that a license would be forthcoming.

Meanwhile, in July 2007, the Franklin Police Department began to crack down on the tavern. Police officers regularly parked their marked cars near the tavern, conducted undercover investigations of the tavern's business practices, and placed under surveillance the tavern, its employees, and its patrons as they left the premises.

The police crack-down continued until September 2007, when it culminated in a raid on the tavern. Although no criminal charges were filed against Harron or Big Time, the negative publicity generated by the raid hurt the tavern's business. In addition, the Town subsequently made the final decision neither to transfer Repsac's liquor license to Harron nor to issue Harron a new license. No hearing was held prior to this decision; to Harron's knowledge, the Town never before had dispensed with such a hearing. Harron then received a letter from the Town informing him that Stephen Williams - the Town's Chief of Police - had strongly opposed the issuance or transfer of a liquor license to Harron. At some time thereafter, due at least in part to its inability to secure a liquor license, the tavern was forced to close its doors.

## B. Procedural Background

On August 27, 2009, Harron filed this suit in the United States District Court for the District of Massachusetts against the Town, Williams, Jeffrey Nutting - the Town's Administrator - and other Town officials who were not identified in the complaint.[1] Williams, Nutting, and the unidentified officials were sued in their official and individual capacities.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Town, Williams, and Nutting moved to dismiss the complaint for failure to state a claim upon which relief could be granted. Harron opposed the motion and moved concurrently for leave to amend the complaint in order to supplement the factual allegations and add Big Time as a plaintiff. After a hearing, the district court allowed Harron's motion to amend but then dismissed the amended complaint, which contained state law negligence claims and federal civil rights claims brought pursuant to 42 U.S.C. § 1983 for the violation of the equal protection and due process rights of Harron and Big Time. The court held that the negligence claims were barred by the Massachusetts Tort Claims Act and that the civil rights claims did not state a plausible case for relief.

---

[1] The spelling of Nutting's name is inconsistent in the record and appears in the caption of this case as "Notting." We understand "Nutting," not "Notting," to be the correct spelling and use that spelling herein.

Harron filed a timely notice of appeal, which was not joined by Big Time.  Although he is not appealing the dismissal of his negligence claims, he argues that the district court erred in dismissing his civil rights claims.[2]  We affirm.

**II**.

We review the district court's dismissal de novo, Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011), construing in Harron's favor all well-pleaded facts in the amended complaint and any reasonable inferences to be drawn therefrom, Tasker v. DHL Ret. Sav. Plan, 621 F.3d 34, 38 (1st Cir. 2010).  In order to survive a motion to dismiss, an amended complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  We identify and disregard any statements in the amended complaint that are either legal conclusions couched as facts or bare bones recitals of the elements of a cause of action. See Iqbal, 129 S. Ct. at 1949-50; Ocasio-Hernández, 640 F.3d at 12.  Taking the remaining factual statements

---

[2] Harron also argues in passing that the district court erred by considering materials outside of the amended complaint.  This argument is limited to one sentence in the summary section of Harron's brief and is unsupported by any citations or facts.  We do not consider such perfunctory arguments.  See Nat'l Foreign Trade Council v. Natsios, 181 F.3d 38, 60 n.17 (1st Cir. 1999) ("We have repeatedly held that arguments raised only in a footnote or in a perfunctory manner are waived.").  In any event, the argument has no merit.

as true, we determine whether those statements permit a reasonable inference of liability for the misconduct alleged.  See Iqbal, 129 S. Ct. at 1949.

Harron's due process and equal protection claims are brought pursuant to 42 U.S.C. § 1983.  "Section 1983 supplies a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law."  Santiago v. Puerto Rico, No. 10-1449, 2011 WL 3689000, at *3 (1st Cir. Aug. 24, 2011) (quoting Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 7 (1st Cir. 2005)).  Accordingly, "[t]o make out a viable section 1983 claim, a plaintiff must show both that the conduct complained of transpired under color of state law and that a deprivation of federally secured rights ensued."  Id.  Here, Harron's civil rights claims fail because he has not adequately alleged the deprivation of a federal right.

## A. Due Process

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving any person of "life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  This prohibition guards against "the arbitrary exercise of the powers of government."  Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845 (1998) (quoting Hurtado v. California, 110 U.S. 516, 527 (1884)).  It "applies fully to a state's political subdivisions,

-6-

including municipalities and municipal agencies." DePoutot v. Raffaelly, 424 F.3d 112, 117 (1st Cir. 2005) (citing Home Tel. & Tel. Co. v. City of Los Angeles, 227 U.S. 278, 286-87 (1913)).

The Due Process Clause has both procedural and substantive components. The former "ensures that government, when dealing with private persons, will use fair procedures." DePoutot, 424 F.3d at 118. The latter "safeguards individuals against certain offensive government actions, notwithstanding that facially fair procedures are used to implement them." Id. Harron's claims implicate both components.

**1. Substantive Due Process**

Where, as here, a plaintiff's substantive due process claims challenge the constitutionality of certain executive acts, "the plaintiff must show both that the acts were so egregious as to shock the conscience and that they deprived him of a protected interest in life, liberty, or property." Pagán v. Calderón, 448 F.3d 16, 32 (1st Cir. 2006); see also Martínez v. Cui, 608 F.3d 54, 64 (1st Cir. 2010) ("[P]laintiffs must show, not only that the official's actions shock the conscience, but also that the official violated a right otherwise protected by the substantive Due Process Clause."). We have not adopted a rigid two-step analysis in which one showing necessarily must precede the other, see Martínez, 608 F.3d at 65 n.9, but we typically have looked first to whether the acts alleged were conscience-shocking. We do so here.

"There is no scientifically precise formula for determining whether executive action is - or is not - sufficiently shocking to trigger the protections of the substantive due process branch of the Fourteenth Amendment." Pagán, 448 F.3d at 32. However, certain principles have emerged from the case law. Executive acts that shock the conscience must be "truly outrageous, uncivilized, and intolerable," Hasenfus v. LaJeunesse, 175 F.3d 68, 72 (1st Cir. 1999), and "the requisite arbitrariness and caprice must be stunning, evidencing more than humdrum legal error," Amsden v. Moran, 904 F.2d 748, 754 n.5 (1st Cir. 1990). Indeed, "[a] hallmark of successful challenges is an extreme lack of proportionality, as the test is primarily concerned with violations of personal rights so severe[,] so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." González-Fuentes v. Molina, 607 F.3d 864, 881 (1st Cir. 2010) (internal quotation marks and ellipses omitted). With particular relevance to this case, we have said that "any permit or license denial, no matter how unattractive, that falls short of being 'truly horrendous' is unlikely to qualify as conscience-shocking." Pagán, 448 F.3d at 33 (quoting Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992)).

As the district court noted, there are no "truly horrific" circumstances alleged here relating to the refusal to transfer or issue a liquor license for the tavern. Cf. González-Droz v. González-Colón, No. 10-1881, 2011 WL 4346673, at *11 (1st Cir. Sept. 16, 2011) (rejecting "out of hand" substantive due process claim based on suspension of physician's license for practicing cosmetic surgery without board certification). Even coming on the heels of the issuance to Harron of various building permits and food-service licenses, the police crack-down on the tavern - which had been serving liquor for four months without a license - was not "truly outrageous, uncivilized, and intolerable," Hasenfus, 175 F.3d at 72, particularly in light of the government interest in enforcing the Town's liquor licensing laws, see González-Fuentes, 607 F.3d at 883 ("[T]he executive actions most likely to shock the conscience are those that are 'intended to injure in some way unjustifiable by any government interest.'" (quoting Lewis, 523 U.S. at 849)). Harron's allegations of other actions taken by the Town are similarly deficient, and his allegations that the interest of the Town and its officials was not legitimate - that it was "wrongful" or "discriminatory" or "designed to put the tavern out of business" - are conclusory in the way proscribed by Twombley, 550 U.S. at 555, and Iqbal, 129 S.

-9-

Ct. at 1949-50.  Accordingly, Harron's substantive due process claims fail.[3]

### 2. **Procedural Due Process**

"We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." González-Fuentes, 607 F.3d at 886 (quoting Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)).

In this case, Harron's procedural due process claims fail at the first step.  Harron has not articulated any liberty interest, and the only property in which he has claimed a protected interest is the liquor license that was never transferred or issued to him.  However, property interests are defined by state law.  See Jeneski v. City of Worcester, 476 F.3d 14, 17 (1st Cir. 2007).  As a would-be holder of a liquor license, Harron had no property interest in the license.  See Mass. Gen. Laws. ch. 138, § 23;

---

[3] Because the acts alleged by Harron do not shock the conscience, we do not consider whether the right identified by Harron - the right to freedom of enterprise - is so fundamental as to be protected by the substantive component of the Due Process Clause.  See González-Fuentes, 607 F.3d at 880 n.13 ("[B]ecause we determine that the challenged executive action is not conscience-shocking, it is unnecessary for us to determine whether [plaintiffs] possess a liberty interest so fundamental as to be protected by substantive due process.").

Grendel's Den, Inc. v. Goodwin, 662 F.2d 88, 90 n.4 (1st Cir. 1981).  Accordingly, Harron's procedural due process claims fail.

**B. Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment "contemplates that similarly situated persons are to receive substantially similar treatment from their government."  Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004).  At a minimum, in order to "provide fair notice to the defendants and state . . . facially plausible legal claim[s]," Ocasio-Hernández, 640 F.3d at 12, Harron had to identify his putative comparators and put forth some facts showing the existence of malice or some other impermissible consideration, see Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001) ("[Plaintiff] needed to allege facts indicating that, compared with others similarly situated, [it] was selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.") (alterations and internal quotation marks omitted).  Harron's allegations are woefully deficient on these points.  Accordingly, his equal protection claims fail.

Affirmed.

-11-