# United States Court of Appeals
## For the First Circuit

No. 13-2353

MICHELE C. TETREAULT,

Plaintiff, Appellant,

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY;
THE LIMITED LONG TERM DISABILITY PROGRAM,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Thompson, Kayatta and Barron,
Circuit Judges.

Jonathan M. Feigenbaum, for appellant.
Joshua M. Cachrach, with whom Wilson, Elser, Moskowitz,
Edelman & Dicker LLP was on brief, for appellees.

October 6, 2014

**BARRON, Circuit Judge.** The Employee Retirement Income Security Act of 1974 (ERISA) governs employee benefit plans. 29 U.S.C. § 1001 et seq. Among other things, the statute permits beneficiaries to go to court to challenge their plan's decision to deny or cut off their benefits. Id. § 1132(a)(1)(B). Before filing suit, however, beneficiaries must first use -- or, as it is often put, "exhaust" -- their plan's procedures for making claims. Madera v. Marsh USA, Inc., 426 F.3d 56, 61 (1st Cir. 2005). The main question for us concerns which document a benefit plan must use to set forth those procedures.

The beneficiary who brings this appeal, Michele Tetreault, argues that ERISA requires a benefit plan to use one particular type of document, which the statute calls the "written instrument." 29 U.S.C. § 1102(a)(1). And she further argues that we should excuse her failure to comply with what her benefit plan contends was one of its claims procedures -- a 180-day deadline for filing an internal appeal of an adverse benefits decision -- because the benefit plan's written instrument did not mention it. But Tetreault is mistaken on that point. That is because the written instrument in this case expressly incorporated a document that clearly sets forth the appeals deadline. For that reason, we affirm the District Court's decision to dismiss Tetreault's benefits challenge. We also affirm the District Court's dismissal

-2-

of Tetreault's two other ERISA claims, which, respectively, are for statutory penalties and for breach of fiduciary duty.

## I.

Michele Tetreault injured her back in 2000 while working as a store manager at The Limited, a nationwide clothing retailer. She then filed a claim under The Limited's long-term disability benefit plan, which is called The Limited Long Term Disability Program. The benefit plan initially denied Tetreault's claim but then, in 2004, reversed course after Tetreault successfully challenged the denial in court.

The situation changed yet again in 2008. By then, Reliance Standard Life Insurance Company had started administering claims for The Limited Long Term Disability Program. In that role, Reliance Standard informed Tetreault on December 18 that, after reviewing her medical records, it had determined she could perform "sedentary" work and thus was no longer eligible for the benefits she had been receiving. Reliance Standard also informed Tetreault at that time that she could appeal the decision in writing to Reliance Standard, but that she would have to do so "within 180 days of your receipt of this letter or the last date to which we have paid, whichever is later."

On January 14, 2009, Tetreault's counsel wrote to Reliance Standard and requested "[t]he Summary Plan Description and the Plan documents for the LTD plan." Tetreault's counsel also

requested that Reliance Standard provide "[a] complete copy of Ms. Tetreault's file in Reliance's possession."

Nine days later, Reliance Standard responded. It sent Tetreault's counsel the requested file, which contained certain of her medical records as well as other documents that related to her claim for benefits. Reliance Standard also sent the document that established the 1998 version of the benefit plan. That document made no reference to an appeals deadline.

Reliance Standard did not at that time send the "Summary Plan Description" Tetreault's counsel had requested. Reliance Standard also did not send some other documents that, though not then in its possession, are relevant to the merits of Tetreault's arguments to this Court. These documents concerned a 2005 version of The Limited Long Term Disability Program. They included both the document that established that version of the benefit plan and another document that described its terms. This last document, which identified itself as the "summary plan description," set forth the 180-day deadline for making an internal appeal of an adverse benefit decision.

On June 15, 2009 -- four days before the 180-day period was set to run out -- Tetreault's counsel sent a letter to Reliance Standard stating that Tetreault "w[ould] be appealing" the termination decision to Reliance Standard and that she expected to complete that appeal within 30 days. Reliance Standard responded

-4-

by letter faxed to Tetreault's counsel on June 17. The letter reminded Tetreault's counsel that the 180-day period was about to expire. The letter also stated that Reliance Standard would not accept an appeal filed after that period. Finally, the letter warned Tetreault's counsel that if he filed Tetreault's appeal late, the "'failure to exhaust' defense" would bar her from challenging the decision to terminate her benefits.

The appeals deadline expired on June 19, 2009. Tetreault did not file an appeal with Reliance Standard until nearly a year later, on May 27, 2010. Reliance Standard then denied the appeal as untimely, at which point Tetreault filed suit.

The District Court declined to excuse Tetreault's failure to appeal to Reliance Standard within the 180-day period. In doing so, the District Court first rejected Tetreault's argument that ERISA required the benefit plan to include the deadline in the "written plan instrument." The District Court then held in the alternative that Tetreault's suit could not proceed because the "written plan instrument" in this case actually did include the deadline through its express incorporation of the "summary plan description." The District Court also rejected additional ERISA claims Tetreault pressed that stemmed from Reliance Standard not having produced the documents that established and summarized the 2005 version of the benefit plan.

We begin with Tetreault's argument that we should excuse her failure to file her appeal with Reliance Standard within the 180-day period. Tetreault reads ERISA to say that only the "plan instrument" -- to use her words -- can impose a claims procedure that a claimant must exhaust before going to court. From that premise, Tetreault argues that her suit may proceed -- despite her failure to exhaust -- because the relevant "plan instrument" never set forth the 180-day appeals deadline.

Other courts (including the District Court in this case) have considered whether ERISA imposes the requirement Tetreault describes. See, e.g., Kaufmann v. Prudential Ins. Co. of Am., 840 F. Supp. 2d 495 (D.N.H. 2012); Merigan v. Liberty Life Assurance Co. of Bos., 826 F. Supp. 2d 388 (D. Mass. 2011). But we need not join in that inquiry. That is because Tetreault is wrong to contend that in this case the "plan instrument" omitted the 180-day deadline.

To explain why we reach this conclusion, we first need to say a bit more about that last quoted phrase -- "plan instrument." Those words do not actually appear in ERISA. But a provision in ERISA does require a benefit plan to be "established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). We thus understand Tetreault to argue that the benefit plan document known under ERISA as the "written instrument" must set forth a

claims procedure.  And so, we start by looking to see if the written instrument in this case contains the appeals deadline Tetreault says was missing.[1]

The Limited Long Term Disability Program and Reliance Standard both say the written instrument does contain the deadline. For support, they point to the documents that concern the 2005 version of the benefit plan.  The first of these documents refers to itself as "the formal plan document."  Among other things, it specifies the procedures for funding, amending, and administering the benefit plan, just as ERISA requires of a "written instrument." 29 U.S.C. § 1102(b)(1)-(3).  There is thus no question this document is the written instrument for the 2005  version of the benefit plan, and the parties do not contend otherwise.

This document does not, however, set forth the appeals deadline.  Instead, it "incorporates by reference . . . the terms

_____

[1] Section 1102(b) of ERISA specifies what must be included in the written instrument.  Among other things, that provision of ERISA requires the instrument to "specify the basis on which payments are made to and from the plan."  29 U.S.C. § 1102(b)(4). But Tetreault does not rely on this provision for her argument that ERISA requires claims procedures to be set forth in the written instrument.  She instead appears to argue that the requirement stems from section 1133, which requires "every employee benefit plan" to provide claims procedures.  Id. § 1133.  It is not at all clear that the text of this provision is best read to mandate a benefit plan to set forth its claims procedures in the written instrument.  But that is of no moment here.  Because we conclude that the written instrument in this case includes the relevant procedure, we do not need to decide whether ERISA required that it do so, let alone which provision of ERISA, singly or in combination, might support such an argument.

of the [Limited Long Term Disability] Program as set forth in" another document. This other document is the summary plan description for the 2005 version of the benefit plan, and it is this document that expressly sets forth the benefit plan's claims procedures, including the 180-day appeals deadline.[2]

Against this background, the question we must decide is a straightforward one of law that we review de novo, Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 516-17 (1st Cir. 2005): does ERISA permit the benefit plan to incorporate the appeals deadline into the written instrument through the 2005 summary plan description? If so, then the written instrument contains the very term Tetreault says it omits.

Background legal principles strongly suggest that such express incorporation is permitted. The Supreme Court in Firestone Tire & Rubber Co. v. Bruch held that "established principles of trust law" are relevant in construing ERISA documents. 489 U.S. 101, 115 (1989). The written instrument for The Limited Long Term

---

[2] This document specifies that claims must be sent to "MetLife," even though Reliance Standard by 2009 had assumed the role of administering claims for the benefit plan. But while Tetreault tries to attach significance to this reference to MetLife, Tetreault's counsel corresponded directly with Reliance Standard, negating any suggestion that Tetreault was misled as to who the benefit plan's claims administrator was. Nor did Tetreault attempt to file an appeal with MetLife. And Tetreault does not develop in her brief, and thus has waived, any argument that this reference to MetLife rendered the appeals deadline unenforceable. See Harron v. Town of Franklin, 660 F.3d 531, 535 n.2 (1st Cir. 2011) (declining to consider "perfunctory arguments" made without citations or facts).

Disability Program identifies Ohio law as the relevant state law for construing it, and we thus look to that state's trust law for guidance on this issue. In Ohio, "[i]nterpreting a trust is akin to interpreting a contract," Arnott v. Arnott, 972 N.E.2d 586, 590 (Ohio 2012), so we treat Ohio's contract-law rules as instructive here. And what we find is, not surprisingly, that, "[i]n Ohio, under general principles of contract law, separate agreements may be incorporated by reference into a signed contract." KeyBank Nat'l Ass'n v. Sw. Greens of Ohio, LLC, 988 N.E.2d 32, 39 (Ohio Ct. App. 2013); cf. Nash v. Trs. of Bos. Univ., 946 F.2d 960, 967 (1st Cir. 1991) (following "Massachusetts contract principles governing fraud in the inducement [as] an appropriate model from which to fashion federal common law principles" applicable under ERISA).

As a general matter, ERISA does nothing to disturb these background legal rules permitting incorporation by reference. ERISA certainly permits more than one document to make up a benefit plan's required written instrument. See Wilson v. Moog Auto., Inc. Pension Plan, 193 F.3d 1004, 1008-09 (8th Cir. 1999) (where the "Pension Plan explicitly refers to, and attempts to incorporate" a separate document, that document "is a plan document" that "cannot be ignored" and "it is not true . . . that the written instrument ERISA requires is the Pension Plan alone"); Horn v. Berdon, Inc. Defined Benefit Pension Plan, 938 F.2d 125, 127 (9th Cir. 1991) (accepting "documents claimed to collectively form the employee

-9-

benefit plan" even if not formally labeled as a "written instrument"); cf. Fenton v. John Hancock Mut. Life Ins. Co., 400 F.3d 83, 88-89 (1st Cir. 2005) (discussing the need to identify which "documents and instruments" set forth the terms of the plan, although concluding on the facts that only one document did). And, at least prior to the Supreme Court's decision in CIGNA Corp. v. Amara, 131 S. Ct. 1866 (2011), courts regularly concluded that ERISA also counted summary plan descriptions as being among the documents that could make up a benefit plan's written instrument. See Pettaway v. Teachers Ins. & Annuity Ass'n of Am., 644 F.3d 427, 434 (D.C. Cir. 2011) (citing cases).

The only possible concern with the written instrument's express incorporation of the summary plan description in this case, then, arises from some language in the Supreme Court's decision in Amara that drew distinctions between summary plan descriptions and written instruments. 131 S. Ct. at 1877-78. Amara explained that a summary plan description is, like a plan's written instrument, a creature of ERISA. Id. (citing 29 U.S.C. § 1022). And Amara emphasized that ERISA distinguishes between these two types of documents as to both their origins and their functions.

As to the two types of documents' origins, Amara said the distinction arises because, under ERISA, the benefit plan's sponsor creates the written instrument that establishes the benefit plan and sets forth its terms, while a different entity, the benefit

-10-

plan's administrator, typically writes the summary plan description. Id. Amara observed that, in consequence, making the summary plan description automatically binding would "mix [those] responsibilities by giving the administrator the power to set plan terms indirectly by including them in the summary plan description." Id. at 1877. Giving the administrator such power, Amara said, might allow the plan administrator to circumvent the written instrument's required "'procedure' for making amendments." Id.

As to the two types of documents' functions, Amara explained that the summary plan description is intended to give beneficiaries a reader-friendly account of the terms that the written instrument establishes. Id. at 1877-78. Thus, Amara stated, summary plan descriptions "do not themselves constitute the terms of the plan." Id. at 1878. Amara further explained that the "syntax" of the statutory provision that requires summary plan descriptions to describe rights "'under the plan[]' suggests that the information about the plan provided by those disclosures is not itself part of the plan." Id. at 1877 (citing 29 U.S.C. § 1022(a)).

Tetreault seizes on Amara's description of these distinctions to argue that The Limited Long Term Disability Program's attempt to incorporate the summary plan description into

-11-

the written instrument was impermissible. But <u>Amara</u> does not support Tetreault's contention.

The problem for Tetreault is that <u>Amara</u> did not concern a case of express incorporation at all. Instead, it concerned a case in which the written instrument for the benefit plan at issue was silent as to the significance of the language set forth in the benefit plan's summary plan description. <u>Amara</u> thus held only that terms from summary plan descriptions should not "<u>necessarily</u> . . . be enforced" as terms of the benefit plan, and the Court set forth the distinctions it identified between written instruments and summary plan descriptions solely in support of that conclusion. <u>Id.</u> (emphasis added). <u>Amara</u>, in other words, simply did not address whether summary plan description terms could be enforced when the written instrument expressly indicated that they should be.

<u>Amara</u>'s silence on that point is what matters for our purposes. For while it is true that, standing alone, a document that merely advises participants and beneficiaries of "their rights and obligations 'under the plan'" does not itself create rights and duties, <u>id.</u>, that may change when the document that unquestionably does create such rights and duties -- namely, the document that ERISA calls the "written instrument" -- expressly states that the language in the advisory document does too. It is not surprising, therefore, that every court that has considered the issue has held

that <u>Amara</u> poses no automatic bar to a written instrument's express incorporation of terms contained in a summary plan description. <u>See, e.g.</u>, <u>Eugene S.</u> v. <u>Horizon Blue Cross Blue Shield of N.J.</u>, 663 F.3d 1124, 1131 (10th Cir. 2011); <u>Langlois</u> v. <u>Metro. Life Ins. Co.</u>, 833 F. Supp. 2d 1182, 1185-86 (N.D. Cal. 2011); <u>Henderson</u> v. <u>Hartford Life & Accident Ins. Co.</u>, No. 2:11CV187, 2012 WL 2419961, at *5 (D. Utah June 26, 2012).[3]

Of course, it is possible that, even though generally permissible, the written instrument's express incorporation of the terms of a summary plan description could in certain applications raise concerns under ERISA. For example, such express incorporation might in some cases raise concerns that a "plan's administrator" -- rather than a "plan's sponsor" -- had changed the terms of the written instrument through its revision of the expressly incorporated summary plan description after the time at which the summary had been first incorporated. <u>Amara</u>, 131 S. Ct. at 1877. But that possibility does not provide a reason to prohibit express incorporation of the summary plan description in all cases, as the express incorporation involved in this case demonstrates. The written instrument in this case incorporated the terms set forth in the 2005 summary plan description, and the summary plan description term at issue here -- the deadline -- was

---

[3] In <u>Pettaway</u>, issued only two months after <u>Amara</u>, the D.C. Circuit reached the same holding without addressing <u>Amara</u> at all. 644 F.3d 427.

not subsequently revised. Thus, there is no concern -- nor any contention by Tetreault -- that the incorporation in this case resulted in the revision of the relevant parts of the written instrument through some means that ERISA might prohibit.

Similarly, this case shows there is no reason to worry that, in consequence of express incorporation, the summary plan description will necessarily fail to "describe plan terms" in the "clear, simple communication" that ERISA intends for such summary documents. Id. at 1877-78. That is because the incorporation in this case concerns a particular type of term -- a deadline for making an internal appeal -- which by regulation the summary plan description must not merely summarize, but instead must set forth in full. 29 C.F.R. § 2520.102-3(s) (requiring that "the procedures governing claims for benefits," including "applicable time limits," be included in the summary plan description). And the summary plan description at issue here did exactly that in setting forth the 180-day deadline.

Our holding is a narrow one. We do not decide that claims procedures must be included in a benefit plan's written instrument. Nor do we address issues not presented in this case but that, in theory, might arise from the express incorporation of a summary plan description. We decide only that a benefit plan may expressly incorporate its internal appeals deadline into the written instrument through a summary plan description and that,

when a benefit plan does so, a beneficiary's failure to meet that deadline may bar her attempt to challenge an adverse benefit decision in court. Having decided that much, though, we have necessarily decided an important issue in this appeal: Tetreault's primary argument for excusing her failure to comply with the internal appeals deadline must fail.[4]

### III.

In an attempt to overcome this obstacle, Tetreault argues in the alternative that she did not have to follow the claims procedures set forth in the 2005 version of the benefit plan at all. She argues she needed to follow only the procedures set forth in the 1998 version. And because, as all parties agree, the written instrument for the 1998 version neither contained nor incorporated the internal appeals deadline, Tetreault contends we

---

[4] Tetreault argues half-heartedly that she actually did comply with the deadline because her counsel's June 15th letter stating that she "w[ould] be appealing" "arguably" was sufficient to bring her into compliance with the requirement that she "notify the claims administrator in writing within 180 days of receiving the determination." The claims procedures further require, however, that the written notice specify "[t]he reason you believe the claim should be paid" and provide "[d]ocuments, records or other information to support your appeal." The letter from Tetreault's counsel provided no such information, and Tetreault does not address its absence in her brief, nor does she elaborate on her "argu[ment]" in this regard beyond simply stating it. We thus deem her argument that she in fact met the 180-day deadline waived. See Harron, 660 F.3d at 535 n.2. In addition, because we conclude that The Limited Long Term Disability Program incorporated the claims procedures into its written instrument, we need not consider whether Tetreault would have to show that she was prejudiced by the deadline's omission in order to be excused for failing to have appealed within the 180-day period.

must for that reason excuse her failure to file her appeal within the 180-day period.[5]

Tetreault bases this argument on her contention that The Limited Long Term Disability Program should be estopped from enforcing the appeals deadline. She rests her estoppel claim on the fact that Reliance Standard did produce the written instrument for the 1998 version of the benefit plan but failed to produce the documents concerning the 2005 version of the benefit plan -- including the corresponding summary plan description -- when her counsel sent the January 2009 letter requesting "the Summary Plan Description and the Plan documents for the LTD plan."

But even if such an argument for estoppel were cognizable under ERISA, an issue we have previously declined to reach, see City of Hope Nat'l Med. Ctr. v. HealthPlus, Inc., 156 F.3d 223, 230 n.9 (1st Cir. 1998), estoppel would not free Tetreault from having to satisfy the 180-day appeals deadline. We have previously

_____

[5] At oral argument, Tetreault for the first time offered an additional argument as to why the 1998 version of the benefit plan should control. She contended that because her benefits "vested" under that earlier version of the benefit plan, she was bound only by the procedures contained in the written instrument for that version. There is no Circuit precedent directly on point, though the Third Circuit has explained in a different context that with respect to "[p]rocedural provisions" of ERISA plans, courts "look to the plan in effect at the time benefits were denied." Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan, 298 F.3d 191, 196-97 (3d Cir. 2002). In any event, Tetreault did not raise the argument below, or in her brief to this court, and we thus consider it waived. United States v. Richardson, 225 F.3d 46, 52 n.2 (1st Cir. 2000) (holding that arguments presented for the first time at oral argument are waived).

explained that, if an estoppel claim could be raised under ERISA, it would require a showing of both a "definite misrepresentation of fact" and reasonable reliance on that misrepresentation. See Law v. Ernst & Young, 956 F.2d 364, 368 (1st Cir. 1992). Here, however, any reliance by Tetreault on the written instrument for the 1998 version of the benefit plan was unreasonable.

Reliance Standard warned Tetreault's counsel, twice, that a 180-day internal appeals deadline applied to her case. Tetreault's counsel apparently believed that this statement contradicted the benefit plan's written instrument, yet he never asked Reliance Standard about the inconsistency. In considering estoppel in another context, we have explained that "[t]he law does not . . . countenance reliance on one of a pair of contradictories simply because it facilitates the achievement of one's goal." Trifiro v. N.Y. Life Ins. Co., 845 F.2d 30, 34 (1st Cir. 1988). Instead, when "[c]onfronted by such conflict[,] a reasonable person investigates matters further." Id. at 33. Tetreault offers no reason why this principle should not apply equally in this case, particularly where she had legal counsel, and discerning none ourselves, we must reject Tetreault's estoppel argument.

IV.

Tetreault presses two other claims. She first seeks statutory penalties of one hundred and ten dollars per day under 29 U.S.C. § 1132(c)(1)(B). She claims she is owed those penalties

-17-

because of Reliance Standard's failure to provide complete and current copies of the "Plan documents" in response to her January 14, 2009 request. She also seeks to hold Reliance Standard liable for breach of fiduciary duty for not producing the documents concerning the 2005 version of the benefit plan in response to that request. Like the District Court, we hold that Tetreault's first claim lacks merit and that her second claim has been waived.

A.

Tetreault bases her claim for statutory penalties against Reliance Standard on two provisions of ERISA: 29 U.S.C. §§ 1021(a) and 1132(c)(1)(B). They require the benefit plan's "administrator" to produce certain documents within thirty days of a written request from a beneficiary. See id. § 1132(c)(1)(B). They also impose penalties of up to one hundred and ten dollars per day for the "administrator['s]" failure to do so. Id. § 1132.[6]

Tetreault argues that Reliance Standard counts as the "administrator" within the meaning of the ERISA penalties provisions because Reliance Standard is The Limited Long Term Disability Program's "claims administrator." And she argues that Reliance Standard, as the "administrator," should pay such ERISA

_____

[6] The statute itself provides for penalties of up to one hundred dollars per day, but the Department of Labor has raised it to up to one hundred and ten dollars pursuant to the Debt Collection Improvement Act of 1996. See Final Rule Relating to Adjustment of Civil Monetary Penalties, 62 Fed. Reg. 40,696 (July 29, 1997).

penalties because it did not send her both the written instrument establishing the 2005 version of the benefit plan and the corresponding summary plan description.

But Tetreault is wrong to characterize Reliance Standard as the "administrator" to which the statute refers. "Administrator" is a defined term under ERISA. The "administrator," the statute tells us, is "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; or (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe." Id. § 1002(16)(A). When the written instrument does designate an "administrator," courts often refer to it as the "plan administrator." See, e.g., Law, 956 F.2d at 372. That entity is a "trustee-like fiduciary" responsible for "manag[ing] the plan." Amara, 131 S. Ct. at 1877. And, consistent with Amara's description of that statutory role, see id., the 2005 written instrument for this benefit plan designates a "Plan Administrator" and grants it "[t]he authority to control and manage the operation and administration of the [Long Term Disability] Program." The record does not conclusively establish who that "Plan

Administrator" is, but the parties agree that the written instrument does not designate Reliance Standard as such.[7]

The 2005 written instrument does refer to a "Claims Administrator," and that is the role Reliance Standard filled. But the "Claims Administrator" is not tasked in the written instrument with "manag[ing]" the Program as a whole. Id. Instead, the written instrument provides that the "Claims Administrator," who is selected by the "Plan Administrator," is authorized only to "receive, review and process claims for Program benefits." For this reason, the written instrument does not designate Reliance Standard to be the "administrator" to which the penalties provisions in ERISA refer, and Reliance Standard is thus not subject to statutory penalties under 29 U.S.C. § 1132(c)(1)(B).

To avoid this result, Tetreault argues that Reliance Standard should be treated as the "administrator" despite the written instrument's contrary designation. And she bases that argument on her contention that Reliance Standard acted as the de facto "administrator" when it responded to the request for benefit plan documents Tetreault's counsel sent in January of 2009.

---

[7] The 2005 written instrument provides that the "Plan Administrator" "means the Plan Administrator under the Health Benefits Plan," and the "Health Benefits Plan" document is not in the record. The 2005 summary plan description, however, lists "Limited Brands, Inc. Welfare Benefits Plan Assoc. Benefits Committee" as the "Plan Administrator," and Tetreault does not contest the accuracy of that identification.

To make this argument, Tetreault relies on this Circuit's decision in Law. But Law does not help Tetreault. In Law, the claimant asked for benefit plan documents from his former employer rather than from his former employer's retirement committee. Contending the former employer did not make an adequate response, the claimant then sought statutory penalties against the former employer, even though the written instrument for the benefit plan designated the retirement committee as the "administrator." Law, 956 F.2d at 372. The Court held that the employer (rather than the retirement committee) was the de facto "administrator" under ERISA not only because the employer responded to the claimant's request, but also because there was other evidence that the employer in fact controlled the retirement committee. Id. at 373. And, on that basis, the Court held the employer was subject to penalties even though the written instrument did not designate it as the "administrator." Id.

In so holding, however, Law was careful to distinguish the case before it, which involved an employer with "little, if any, separate identity" from the internal retirement committee that had been designated as the "plan administrator," from cases involving "attempts to recover against entities which were clearly distinct from the plan administrator." Id. at 374. And this same distinction takes care of Tetreault's argument here. Tetreault seeks penalties from an entity -- Reliance Standard -- that is

-21-

entirely separate from the expressly designated "administrator." For that reason, the mere fact that Reliance Standard responded to a letter seeking documents relevant to the benefit plan does not make Reliance Standard the de facto "administrator." We thus affirm the District Court in dismissing Tetreault's statutory penalties claim.

B.

Finally, Tetreault contends Reliance Standard breached its fiduciary duty to her when it produced only the written instrument for the 1998 version of the benefit plan in response to her 2009 request for the "Plan documents." In support of this argument, Tetreault argues that ERISA fiduciaries have a duty to "speak the truth" to plan beneficiaries, see Varity Corp. v. Howe, 516 U.S. 489, 506 (1996), and that Reliance Standard breached that duty by sending only the document that established the 1998 verison of the benefit plan and not the documents that concerned the 2005 version. But this claim is not properly before us.

The District Court found that Tetreault failed to include this claim in her second amended complaint, and then denied Tetreault's motion to amend her complaint a third time to add it. Because Tetreault advances no argument for rejecting the District Court's determination of waiver, nor any reason for concluding the District Court abused its discretion in declining to permit her to

amend her complaint, we affirm the dismissal of any separate fiduciary duty claim Tetreault advances.

## V.

We conclude that Tetreault failed to meet a deadline for appealing internally the decision to cut off her long-term disability benefits. We further conclude that her benefit plan had expressly incorporated that deadline into the benefit plan's written instrument. On that basis, we affirm the District Court's dismissal of her benefits challenge. We also conclude the District Court did not err in ruling that Tetreault could not recover statutory penalties against Reliance Standard or that she had waived her claim for breach of fiduciary duty. Accordingly, we affirm the District Court's dismissal of those claims as well.