RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0207p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

─────────────────

BOARD OF TRUSTEES, in its Capacity as Fiduciary and Plan Administrator of the National Elevator Inc. Health Benefit Plan,

*Plaintiff-Appellee,*

v.

No. 14-4048

KYLE J. MOORE; GOODSON & COMPANY, LTD.,

*Defendants-Appellants.*

─────────────────

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:13-cv-00477—Sandra S. Beckwith, District Judge.

Argued: April 22, 2015

Decided and Filed: August 25, 2015

Before: DAUGHTREY, GIBBONS, and GRIFFIN, Circuit Judges.

─────────────────

#### COUNSEL

─────────────────

**ARGUED:** Stephanie M. Day, SANTEN & HUGHES, Cincinnati, Ohio, for Appellants. Vaseem S. Hadi, GIBSON & SHARPS, PSC., Cincinnati, Ohio, for Appellee. **ON BRIEF:** Stephanie M. Day, SANTEN & HUGHES, Cincinnati, Ohio, Brett C. Goodson, GOODSON & COMPANY, LTD., Cincinnati, Ohio, for Appellants. Vaseem S. Hadi, John D. Kolb, GIBSON & SHARPS, PSC., Cincinnati, Ohio, for Appellee.

─────────────────

#### OPINION

─────────────────

MARTHA CRAIG DAUGHTREY, Circuit Judge. The subrogation claim in this case arose from a dispute over the Health Benefits Plan established by the Board of Trustees of the

1

National Elevator Industry (NEI Board) under ERISA—the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461. The NEI Board, acting as the fiduciary and administrator of the Plan, sued Kyle Moore and the law firm Goodson & Company, Ltd. (collectively, "Moore"), seeking reimbursement for medical expenses that the Plan paid on Moore's behalf, following Moore's successful settlement of a negligence action filed against the entities responsible for injuries he suffered in an accident. In response, Moore contended that the terms of the Plan did not provide for reimbursement and filed a counterclaim alleging that the Board had violated its fiduciary duty by misrepresenting the terms of the Plan. Because the district court correctly concluded that the summary plan description containing the subrogation provision set out the binding terms of the Plan and that the plain language of the provision required reimbursement, we affirm. We also conclude that the district court's limitation on the scope of discovery did not constitute an abuse of discretion.

**FACTUAL AND PROCEDURAL BACKGROUND**

The NEI Board administers a self-funded, multi-employer health plan covered by ERISA that provides health benefits to the employees of hundreds of companies in the elevator industry. Two documents related to the plan are at issue here. The first is titled Restated Agreement and Declaration of Trust (Trust Agreement), entered into in 1976 (and amended 17 times since then) by the participating elevator companies and the NEI Board. The Trust Agreement provides for the establishment and funding of the "The National Elevator Industry Health Benefit Plan" and sets out the method of selection, powers, and obligations of the NEI Board, which acts as both administrator and fiduciary of the trust.

As important as what the Trust Agreement does contain is what it does not: the customary nuts and bolts of an ERISA health plan. The document does not specify what claims and services are covered, the costs for which the participants and their beneficiaries are responsible, and how a participant may file a claim to secure benefits. Instead, Article VII of the Trust Agreement provides that "[t]he Trustees shall have full discretionary authority to adopt a Plan of Welfare Benefits, which sets forth eligibility requirements, type, amount, and duration of benefits that are to be provided to eligible employees . . . ." Further, a paragraph titled Written Plan of Benefits provides that "[t]he detailed basis on which payment of benefits is to be made

pursuant to this Trust Agreement shall be set forth in the Plan of Welfare Benefits . . . [and] shall be subject to amendment by the Trustees from time to time."

The second document is the National Elevator Industry Health Benefit Plan Summary Plan Description, or SPD. The SPD provides the details not included in the Trust Agreement— for example, the scope of eligibility for health benefits coverage and how the plan and participants divide medical expenses. The SPD also includes a subrogation provision labeled Other Party Liability Claims:

> The Plan has the right to recover benefits advanced by the Plan to a covered person for expenses or losses caused by another party. If a covered person is injured or becomes ill under circumstances where another party is directly or indirectly liable for the illness or injury, the Plan is only obligated to provide covered benefits resulting from that illness or injury that exceed any amounts recovered from another party (whether or not the amount recovered is designated to cover medical expenses).

> Amounts that have been recovered by a covered person from another party are assets of the Plan by virtue of the Plan's subrogation interest and are not distributable to any person or entity . . . . However, amounts recovered by such covered person from another party in excess of benefits paid by the Plan are the separate property of such covered person.

> \* \* \* \* \*

> The Plan has a right of first reimbursement out of any recovery. Acceptance of benefits from the Plan for an injury or illness by a covered person, without further action by the Plan and/or the covered person, constitutes an agreement that any amounts recovered from another party by award, judgment, settlement or otherwise, and regardless of how the proceeds are characterized, will promptly be applied first to reimburse the Plan in full for benefits advanced by the Plan due to the injury or illness and without reduction for attorneys' fees, costs, expenses or damages claimed by the covered person, and regardless of whether the covered person is made whole or recovers only part of his/her damages.

> \* \* \* \* \*

> The covered person agrees that neither he/she nor anyone acting on his/her behalf will settle any claim relating to the injury or illness without the written consent of the Plan.

Defendant Kyle Moore qualified as a beneficiary of the NEI Plan through his father, who was a plan participant. After Moore was injured in a 2007 car accident allegedly caused by a deputy sheriff, the plan paid $34,204.10 in medical expenses on his behalf. Moore, represented

by the personal-injury firm Goodson & Company, filed a negligence action in state court against the deputy, the Hamilton County Sheriff's Department, and the County, seeking damages for his injuries that specifically included in detail the expenses already paid by the NEI Plan. As a partial defense to Moore's claims, the state-court defendants relied on an Ohio collateral-source statute providing that benefits for an injury or loss received from a third-party source, including an insurance policy, be deducted from any award against a political subdivision for that injury. *See* Ohio Rev. Code § 2744.05(B)(1). The statute also provided that "[a] claimant whose benefits have been deducted from an award under . . . this section is not considered fully compensated and shall not be required to reimburse a subrogated claim for [the deducted] benefits . . . ." *Id.*

In order to protect its subrogation rights and to establish a lien against any recovery that Moore could receive for his medical expenses, the NEI Board intervened as a plaintiff in Moore's state court action and filed a motion to strike the collateral-source defense as preempted by ERISA. Before that issue was resolved and before the case came to trial, Moore settled his claims against the state-court defendants for $500,000, without notice to the NEI Board. The settlement agreement provided that the amount paid "represents the settlement of all of Moore's claims but specifically excludes the payments for medical expenses made by National Elevator Industry Heath Benefit Plan on his behalf . . . ." Similarly, the sections of the agreement setting out Moore's release and indemnity obligations exempted "the alleged subrogation claim of National Elevator Industry Health Benefit Plan . . . ." And finally, a letter from the state-court defendants' counsel to the Goodson firm confirmed that the settlement agreement "will satisfy any and all outstanding liens from the settlement proceeds except for the lien of National Elevator Industry Health Benefit Plan."

After Moore settled his claims, the Board promptly withdrew its motion to strike, voluntarily dismissed its state court complaint and made a demand against the proceeds of the settlement for the Plan expenditures covering Moore's medical expenses. When Moore refused to reimburse the Plan, the Board invoked 29 U.S.C. § 1132(a)(3) and sued Moore in district court, seeking to enforce its subrogation rights by securing a constructive trust and equitable lien over the $34,204.10 that, the Board alleged, remained in Moore's or his law firm's possession.

In response, Moore contended that the subrogation provision was unenforceable because it appeared only in the SPD, not in the Trust Agreement. He also counterclaimed, alleging that the Board breached its fiduciary duty by misrepresenting the terms of the plan.

The district court first sustained the magistrate judge's order denying Moore's discovery demand that the Board produce "all documents and all information on every subrogation claim the Board has ever asserted against a plan participant." The court found that the request was irrelevant and a "waste of time and resources." Next, in a model of efficient and expeditious analysis, the district court granted summary judgment in favor of the Board on the subrogation claim, holding that the SPD was the controlling plan document and that the plain terms of the subrogation provisions established the Plan's right to recoup the medical expenses paid on Moore's behalf. This appeal followed.

**DISCUSSION**

We review the district court's grant of summary judgment *de novo*. *See, e.g., Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 842 (6th Cir. 2015). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact." *Id.* (quoting Fed. R. Civ. P. 56(a)). There is "no genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Wesley v. Campbell*, 779 F.3d 421, 434 (6th Cir. 2015) (citation and internal quotation marks omitted). As the district court was required to do, we "construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008).

Moore claims that the grant of summary judgment should be reversed because genuine issues of material fact exist as to three issues: (1) whether the SPD is a controlling plan document, making the subrogation provision enforceable; (2) whether the settlement funds were wholly "excess and separate" from the medical costs the Board seeks to recover and therefore exempt from subrogation; and (3) whether subrogation applies in the absence of a judicial finding or admission of liability by the third party. Because each of these issues poses a legal question rather than a factual dispute, and because the district court's resolution of the legal

issues was correct, as we explain in more detail below, the court properly granted summary judgment in the NEI Board's favor.

**Whether the SPD is a Controlling Plan Document**

The central question in this appeal is whether the SPD—the only document in the record containing a subrogation provision—is a binding plan document that sets out enforceable terms. The evidence in the record compels the conclusion that the SPD is such a document.

ERISA requires covered welfare benefit plans to furnish to participants and beneficiaries a written "summary plan description" that explains the terms of the plan "in a manner calculated to be understood by the average plan participant . . . ." 29 U.S.C. § 1022(a). At one time, we held the then-prevailing view that statements in a summary plan description are necessarily binding and trump conflicting provisions in the plan itself. *See*, *e.g.*, *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 136 (6th Cir. 1988). The Supreme Court approved a contrary rule in *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011), holding that if the language in a SPD conflicts with the language in an ERISA plan, a district court is required to enforce "the terms of the plan." *Id.* at 1877. The Court noted that the goal of the summary plan description, *i.e.*, "clear, simple communication," might be frustrated if plan administrators "sacrifice[d] simplicity and comprehensibility in order to describe plan terms in the language of lawyers." *Id.* at 1877, 1878.

The NEI Trust Agreement is a foundational document that, among other things, authorizes the Board of Trustees to adopt a written welfare benefits plan, to administer the plan, and to act as plan fiduciary. It covers such items as the establishment of a trust fund to finance benefits, the composition, duties, and powers of the trustees, and the operation of the board. Central to the agreement is the authority of the trustees to "adopt a Plan of Welfare Benefits, which sets forth eligibility requirements, type, amount, and duration of benefits that are to be provided to eligible employees." The Plan must be in writing and set out "[t]he detailed basis on which payment of benefits is to be made pursuant to this Trust Agreement." In a somewhat unusual process, although not unique to the elevator industry, the Board omitted what is normally the next step—the drafting of a welfare benefits plan—and went straight to creation of a summary plan description, which is typically a written handbook for employees, explaining in

everyday English what benefits are provided under the welfare benefits plan and how to go about filing a claim for them.  *See id.*

The NEI Board approved a summary plan description—the SPD mentioned above.  But, because it was the only document other than the Trust Agreement that was drawn up, John McGowan, the Plan's director of health claims administration, explained in his deposition that the SPD constituted the Welfare Benefits Plan provided for in the Trust Agreement, as well as the summary of the Plan—in other words, two documents in one.  His position was reinforced by the fact that the details describing the employee benefits and how to obtain them were entirely missing from the Trust Agreement and, instead, appeared in the SPD.

The district court agreed with McGowan's assessment.  The court thus rejected Moore's argument that the Trust Agreement was the controlling "welfare benefit plan" and that because the subrogation provision appeared only in the SPD, not the Trust Agreement, it was not enforceable against the proceeds of his settlement in the state-court negligence action.  Moore now contends that the district court erred, pointing to the Supreme Court's observation in *Amara* that "summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan."  *Id.* at 1878 (emphasis in original).  In *Amara*, however, it was clear that one document functioned as the plan itself, that a different document functioned as the summary plan description, and that the two documents contained conflicting terms.  Nothing in *Amara* prevents a document from functioning both as the ERISA plan *and* as an SPD, if the terms of the plan so provide.  *See Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1131 (10th Cir. 2011) ("[A]n SPD can be part of the Plan."); *see also Tetreault v. Reliance Standard Life Ins. Co.*, 769 F.3d 49, 56 (1st Cir. 2014) (holding that an SPD creates enforceable rights and duties when a plan document expressly incorporates the SPD).

In unreported cases, two of our sister circuits have been called upon to review the same NEI SPD at issue here and have recognized that it functions as the controlling ERISA plan in the absence of a separate plan document.  *See Bd. of Trustees of the Nat'l Elevator Indus. Health Ben. Plan v. Montanile*, 593 F. App'x 903, 910 (11th Cir. 2014), *cert. granted*, 135 S. Ct. 1700

(2015)**[1]** ("The terms specified in [the SPD] are enforceable . . . because (1) no other document lays out the rights and obligations of plan participants and (2) the Trust Agreement contemplated the rights and obligations would be set forth in a separate document."); *see also Bd. of Trustees of the Nat'l Elevator Indus. Health Ben. Plan v. McLaughlin*, 590 F. App'x 154 (3d Cir. 2014), *cert. denied*, 135 S. Ct. 1405 (2015) (permitting the NEI Board as fiduciary to seek reimbursement of medical expenses as an equitable lien on the proceeds of a plan participant's settlement of a personal-injury claim against a third party).

Quoting from *Feifer v. Prudential Insurance Co. of America*, 306 F.3d 1202, 1209 (2nd Cir. 2002), the district court held, succinctly and correctly, that:

> The summary plan description in the record is the controlling document because there is no other plan document that establishes Moore's right to receive medical benefits and the Plan's subrogation rights. The document establishing the Plan's trust is not the applicable "plan document" because it does not describe "the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits."

*Feifer*, if not directly on point with the facts in this case, is nevertheless instructive.**[2]** It holds that an SPD describing employee benefits that anticipates the existence of a Plan, but is issued

---

**[1]**The Supreme Court granted certiorari in *Montanile* on a different issue: Whether a lawsuit by an ERISA fiduciary against a participant to recover an alleged overpayment by the plan seeks "equitable relief" within the meaning of ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), if the fiduciary has not identified a particular fund that is in the participant's possession and control at the time the fiduciary asserts its claim. *See* 135 S. Ct. 1700 (Mem).

**[2]**The case involved a dispute over a long-term disability insurance claim under an ERISA employee benefit program that the new owner of the business summarized in an employee handbook entitled Benefits Program Summary. The program summary was issued at the time the company changed hands in January 1993. Later referred to as the SPD, it contained a disclaimer indicating that it was issued "for informational purposes only"; that it was "not intended to cover all the details of the [Health Benefits] Plan"; and that the "actual provisions of the Plan" would "govern in settling any questions that may arise." *Id.* at 1205. The actual Plan, however, did not come into existence until the employer executed a "group contract" with Prudential in July 1997, more than four years after the SPD was issued. It did contain an offset provision. In the meantime, Prudential's insurance broker submitted a draft Benefit Booklet in September 1993 that, unlike the SPD, required long-term disability payments to be offset by the amount of any Social Security benefits received by participants. The Benefits Booklet underwent multiple redrafts over the next few years but was never distributed to employees. Nevertheless, in October 1995, two years after Feiffer took disability leave in August 1993, he received notice that if he wished to continue receiving long-term disability benefits, he was required to reimburse Prudential retroactively for the amount of the offsets that had not been applied to his disability payments. In the litigation that followed, the Second Circuit reversed the district court's grant of summary judgment to Prudential Insurance, based on the district court's determination that the terms of the 1997 Plan controlled because of the disclaimer in the SPD, thereby preventing any conflict between the SPD and the Plan.

The circuit court noted, first, that ERISA provides that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument," quoting 29 U.S.C. § 1102(a)(1), and, second, that "th[e] written instrument requirement is central to our analysis of ERISA plans because it serves two of the primary goals of ERISA: informing employees of the benefits to which they are entitled, and providing some degree of certainty in the administration of benefits." *Id.* at 1208 (internal quotation marks and citation omitted). The court concluded:

long in advance of the Plan, constitutes the actual plan, as well as a summary of a plan "that is nowhere else in writing." *Id.* at 1208. Nothing in the Supreme Court's later opinion in *Amara* has any negative effect on the Second Circuit's analysis in *Feifer*.

We conclude that the district court's treatment of the issue must be affirmed, and we turn to Moore's remaining issues on appeal, none of which requires extensive discussion.

### Whether the Settlement Funds Were "Excess and Separate"

Moore contends that the Ohio collateral-source law prevents the Board from recovering the medical expenses it paid on Moore's behalf. This argument is based on a misreading of the terms of the subrogation provision, however. The SPD provides as follows:

> Amounts that have been recovered by a covered person from another party are assets of the Plan by virtue of the Plan's subrogation interest and are not distributable to any person or entity . . . . However, amounts recovered by such covered person from another party *in excess of benefits paid by the Plan* are the separate property of such covered person (emphasis added).

Moore reads this provision to mean that settlement amounts are "excess and separate" from the expenses paid by the plan and are not recoverable in subrogation. He further contends that because Ohio law purportedly prevented him from recovering his medical expenses from the state-court defendants, his settlement compensated him only for his other injuries and so was "excess and separate" from the money paid by the plan. Unfortunately for Moore, this argument simply has no merit.

"When interpreting ERISA plan provisions, general principles of contract law dictate that we interpret the provisions according to their plain meaning in an ordinary and popular sense." *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 343 (6th Cir. 2011) (citation and internal quotation marks omitted). The plain meaning of the subrogation provision does not exempt funds that are "excess and separate." Rather, it provides that "amounts recovered . . . in excess of benefits paid by the Plan" are the separate property of the

---

As we have noted, the Program Summary is the only document in the record that existed between January and September 30, 1993, and that described employee benefits. We do not think that an employer can avoid the written instrument requirement by treating this written document describing employee benefits as merely a summary of a plan that is nowhere else in writing.

*Id.*

participant.  The key word is "excess."  The word "separate" operates only to tell the recipient that he may "distribut[e]" the "excess" funds as he wishes.

It is clear that the word "excess" creates a mathematical limitation on the plan's subrogation rights, not a categorical one.  *See* Am. Heritage Dictionary of the English Language 638 (3d ed. 1992) (defining "excess" in its adjectival form to mean "[b]eing more than is usual, required, or permitted").  All amounts recovered are assets of the plan by virtue of its subrogation interest, but funds recovered beyond that amount are the person's separate property.  This reading is the only one consistent with the other language that makes clear that the subrogation right applies "whether or not the amount recovered is designated to cover medical expenses" and "regardless of how the proceeds are characterized."

Because the interpretation offered by the Board is the only one the contract's terms will bear, the grant of summary judgment on this issue must be affirmed.

**Whether the Board's Subrogation Claim Fails for Lack of a Finding of Liability**

Next, Moore argues that the subrogation provision applies only where the settling third-party is determined, either through judicial finding or admission, to be liable for the participant's injuries.  This argument proceeds in two steps.  Initially, Moore notes that the first paragraph of the subrogation section says that the plan's right of recovery is triggered "under circumstances where *another party* is *directly or indirectly liable* for the illness or injury" (emphasis added).  A later paragraph governing the plan's right of reimbursement from a settlement provides that "[a]cceptance of benefits . . . constitutes an agreement that any amount recovered from *another party . . .* will promptly be applied first to reimburse the plan" (emphasis added).  Therefore, Moore argues, the term "another party" in the reimbursement provision must be understood to mean "another party" who is "directly or indirectly liable."  The second step is to argue that a party is "directly or indirectly liable" within the meaning of the plan only if a judge or the party says so.  Moore notes that state court defendants disputed liability in the settlement agreement and postulates from this fact that no liability has been established.

This argument is clearly unavailing.  The subrogation provision defines "party" to cover several categories, including—but not limited to—both "[t]he party or parties that caused the

illness, sickness or bodily injury" and "[a]ny other person, entity, policy, or plan that is liable or legally responsible in relation to the illness, sickness or bodily injury." Obviously, then, the right of reimbursement is not dependent upon a judicial determination of liability. It also pertains when the settling party "caused the . . . injury." All indications are, one, that Moore alleged in his state court suit that the defendants caused his injuries and, two, that he obtained the settlement as a result of those allegations. Moore has never disputed that the state court defendants caused his injuries. And even if he had, the facts in the record—the state court pleadings and the settlement—would lead any fact-finder in *federal* court to conclude that the municipal defendants caused Moore's injuries, just the sort of judicial determination that Moore says is required. Without question, summary judgment was properly entered on this claim.

**The Discovery Issue**

Finally, Moore contends that the grant of summary judgment must be reversed because the district court erroneously limited the scope of discovery. He raises two issues, one of which is not preserved for appellate review, and the other of which fails on the merits.

First, Moore asserts in his reply brief that the district court erred by not allowing him to take the deposition of the Board's attorney. He sought to depose the attorney to learn why the Board dismissed its state court complaint after Moore settled with the municipal defendants. The magistrate judge acknowledged that the fiduciary exception limits the scope of the attorney-client privilege between plan administrators and attorneys representing the plan, but found the exception inapplicable here. Because Moore did not file an objection to the magistrate judge's order, the challenge to it is waived. *See, e.g.*, *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).

Second, Moore claims that the district court erred by denying his request for discovery related to subrogation claims the Board made in other cases. During administrator McGowan's deposition, he testified that he had hired a third-party subrogation vendor and delegated to that vendor the authority to compromise subrogation claims based on the merits of the case and the availability of funds. Following McGowan's deposition, Moore issued interrogatories demanding information relating to every subrogation/reimbursement claim ever made on behalf of the plan, including the name of the plan participant, the health benefits paid by the plan, the

amount collected as a result of the claim, and the fees and expenses charged by any third-party vendor as a result. The Board objected, and the magistrate judge sustained the objection. Moore then filed an objection that the district court overruled. On appeal, Moore reiterates the argument he made below, *i.e.*, that "there appears to be uneven, arbitrary and capricious application of the" subrogation provision in the SPD and, thus, that the information sought was relevant to the fiduciary-duty claim against the Board, because "[a]ny uneven, disparate treatment of Plan participants or beneficiaries is a breach of fiduciary duty."

A district court's decision limiting the scope of discovery is reviewed for an abuse of discretion. *See, e.g., Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010). "A district court does not abuse its discretion in denying discovery when the discovery required would be irrelevant to the underlying issue to be decided." *United States v. Dairy Farmers of Am.*, 426 F.3d 850, 862 (6th Cir. 2005) (citation and internal quotation marks omitted). As the district court correctly determined in this case, the issue with respect to the fiduciary claim was whether the subrogation provision appeared in a controlling plan document and applied to Moore's recovery, not whether the Board had consistently enforced its subrogation rights against plan beneficiaries in the past. Pleading a particular breach of fiduciary duty would not entitle Moore to discover information that might support a different claim under the same legal rubric. *See Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001) ("We will not find that a district court erred by denying a fishing expedition masquerading as discovery."). As a result, we cannot say "with a definite and firm conviction that that the trial court committed a clear error of judgment" and, therefore, there was no abuse of discretion in the district court's ruling. *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir. 2014) (citation and internal quotation marks omitted).

## CONCLUSION

For the reasons set out above, we AFFIRM the district court's judgment.