# United States Court of Appeals
## For the First Circuit

No. 08-2564

LUIS F. MEDINA,

Plaintiff, Appellant,

v.

METROPOLITAN LIFE INSURANCE COMPANY,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Torruella, Lipez and Howard,
Circuit Judges.

Sonia B. Alfaro de la Vega with whom Alfaro Alfaro & Acevedo-Carlson, was on brief, for appellees.
Frank Gotay-Barquet with whom Gotay & Pérez, P.S.C., was on brief, for appellant.

November 25, 2009

**HOWARD**, **Circuit Judge**.  Plaintiff Luis Medina appeals from the district court's entry of summary judgment in favor of defendant Metropolitan Life Insurance Company ("MetLife").  Medina contends that MetLife violated the Employment Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., by using an arbitrary and capricious procedure in terminating his short-term disability benefits and refusing to grant him long-term disability benefits.  He also seeks monetary sanctions against MetLife for an alleged breach of its disclosure obligations under 29 U.S.C. § 1132.  The district court found no violation in either of the benefits determinations.  We affirm.

Medina worked as a maintenance technician for Abbott Laboratories, Inc. in Puerto Rico.  As an Abbott employee, he participated in a disability insurance plan administered by Metlife that provided both short-term and long-term disability benefits ("the Plan").  In June 2006, Medina ceased work due to obstructive sleep apnea and high blood pressure.  Shortly thereafter, he submitted a claim for short-term disability benefits under the Plan.  His treating physician, Dr. Hector Stella, provided MetLife a diagnostic report.  On August 1, 2006, MetLife informed Medina that it would grant him short-term disability benefits for a limited period, but would require additional documentation before any further benefits would be awarded.  Dr. Stella submitted a

second evaluation on August 21, 2006 containing further diagnoses but little in the way of specific test results.

On several occasions over the next two months, MetLife attempted to contact Medina and Dr. Stella by letter, phone, and fax in order to explain that more specific information was necessary and to request test results and progress notes. While attempts to reach Dr. Stella directly were apparently unsuccessful, Medina agreed to follow up with him about MetLife's need for additional medical information. On November 13, 2006, Dr. Stella submitted his progress notes covering the period from June 4, 2006 to August 16, 2006.

In early December 2006, MetLife notified Medina that it was terminating his short-term disability benefits. In support of its decision to terminate benefits, MetLife stated that the information submitted by Dr. Stella was insufficient to support a finding of full disability under the Plan's terms.[1] The notice

---

[1]Specifically, the notice stated:

We reviewed the medical progress notes of your physician, Dr. Hector Stella Estevez, dated from June 4, 2006 to August 16, 2006. They indicate that you continue to have high blood pressure. However, the readings documented in the medical reports are within a normal range. Your physician indicated a weight-loss plan but he has not documented what the recommended plan is, what your weight was at the start of the plan and what progress, if any, has been made to date. Your physician gave a diagnosis of congestive heart failure, but he has not furnished any electrocardiogram, medical examination findings, laboratory tests or X-rays to support that diagnosis. Your physician reports problems with the

also described MetLife's attempts to obtain more detailed evidence from Dr. Stella.

In late December 2006, Medina appealed to MetLife to reconsider its decision, and MetLife agreed to submit the claim for independent medical review. On January 7, 2007, Medina forwarded additional progress notes and reports from Dr. Stella detailing symptoms, diagnoses, and treatments. MetLife referred Medina's entire claim file to an independent medical consultant, Dr. Stephen Kreitzer. On January 31, 2007, Dr. Kreitzer issued a report in which he concluded that "there are insufficient clinical findings or data to support reduction in ability to work full time or that he cannot perform his medium work." On February 2, 2007, MetLife again attempted to contact Dr. Stella to ask for his thoughts on the report and, in the event of a disagreement, any evidence supporting a contrary position. It faxed this request directly to Dr. Stella's office, but Dr. Stella apparently never received it. MetLife also repeatedly informed Medina that it was trying to reach Dr. Stella and asked him to relay the message in order to assure a response. Medina told MetLife that he had already submitted all of his medical records and that Dr. Stella was upset because there was

C-pap machine but he does not make any other recommendation. Although we have treatment notes since July, no information is contained in them with respect to physical and/or functional limitations or restrictions that prevent you from returning to your own job as a maintenance technician at Abbott.

-4-

nothing left to send.  By mid-March, MetLife had still heard nothing from Dr. Stella in response to Dr. Kreitzer's report.

On March 21, 2007, after reviewing the existing medical information, findings, clinical remarks, and Abbott policies, MetLife concluded that the original denial of short-term disability benefits was appropriate.  It informed Medina that his benefits would not be reinstated and that he had exhausted all available administrative remedies on that claim.

Medina sued in the federal district court for the District of Puerto Rico and later filed a motion in that court for judgment on the administrative record.  The district court granted summary judgment to MetLife, and this appeal ensued.

## I. Denial of Benefits

Medina maintains that he is entitled to both short-term and long-term disability benefits.  As to the former, the district court reviewed the administrative record and determined that MetLife did not abuse its discretion in denying the claim.  As to the latter, it found that it lacked jurisdiction because Medina had not yet exhausted his administrative remedies.  We review de novo the district court's grant of summary judgment.  Stamp v. Metro. Life Ins. Co., 531 F.3d 84, 88 (1st Cir. 2008).

## A. Short-Term Disability Benefits

Because the Plan grants MetLife discretionary authority to determine eligibility for benefits, we will not overturn its

-5-

decision unless it was arbitrary or capricious. <u>Metro. Life. Ins. Co.</u> v. <u>Glenn</u>, 128 S.Ct. 2343, 2347-48 (2009); <u>Firestone Tire & Rubber Co.</u> v. <u>Bruch</u>, 489 U.S. 101, 115 (1989).[2] Under this generous standard, we inquire into whether MetLife's decision was reasoned and supported by substantial evidence. <u>Stamp</u>, 531 F.3d at 88. Put differently, we will uphold MetLife's decision to deny disability benefits "if there is any reasonable basis for it." <u>Wallace</u> v. <u>Johnson & Johnson</u>, ___ F.3d ___, No. 09-1069, 2009 WL 3294841 at *3 (1st Cir. Oct. 14, 2009).[3]

Medina presents three arguments as to why MetLife's procedures in terminating his short-term benefits should be deemed arbitrary and capricious. None are availing.

_____

[2]The Plan states in relevant part:

In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

[3]Medina argues that a less deferential standard of review should apply, notwithstanding the Plan's grant of discretionary authority to MetLife, because a "serious procedural irregularity existed" that "caused a serious breach of the plan administrator's fiduciary duty." <u>Woo</u> v. <u>Deluxe Corp</u>., 144 F.3d 1157, 1160 (8th Cir. 1998). Even if we were to subscribe to such a rule, we find no such irregularity here.

First, he alleges that Dr. Kreitzer based his evaluation on false assumptions concerning the extent of his occupational demands. A MetLife case manager had originally classified the maintenance technician work that Medina performed as a "heavy" job. Yet when Dr. Kreitzer issued the report on which MetLife relied, he stated that "there are insufficient clinical findings or data to support reduction in ability to work full time or that he cannot perform his medium work." (Emphasis added). Medina now argues for the first time that the description of his job duties as "medium work" shows that Dr. Kreitzer premised his recommendation on the belief that Medina's occupation was less demanding than it actually was. By failing to raise this argument in either the claims process or the district court, however, Medina has waived it on appeal. Lugo-Velazquez v. Stiefel Labs., Inc. 522 F.3d 96, 99 (1st Cir. 2008); Campbell v. BankBoston, N.A., 327 F.3d 1, 10 (1st Cir. 2003). We therefore do not address it.

Second, Medina claims that MetLife did not accord sufficient weight to Dr. Stella's evaluations in considering whether his physical impairment met the Plan's definition of "full disability." Yet "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." Black &

Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003). "[A] plan administrator is not obligated to accept or even to give particular weight to the opinion of a claimant's treating physician." Morales-Alejandro v. Med. Card Sys., Inc., 486 F.3d 693, 700 (1st Cir. 2007). Consequently, "in the presence of conflicting evidence, it is entirely appropriate for a reviewing court to uphold the decision of the entity entitled to exercise its discretion." Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 216 (1st Cir. 2004).

In this case, Dr. Kreitzer had substantive reasons for diverging from Dr. Stella's assessment. In his report, Dr. Kreitzer noted that most of the medical information that Medina had provided through Dr. Stella was not recent; that many significant diagnostic tests had not been performed; that it is very rare for sleep apnea to cause impairment; and that there were insufficient clinical findings or data to support reduction in work ability. We conclude that these findings by an independent medical examiner gave MetLife the requisite "substantial evidentiary grounds for a reasonable decision in its favor." Denmark v. Liberty Life Assur. Co. of Boston, 566 F.3d 1, 6 (1st Cir. 2009)(citation omitted).

Third, Medina claims that MetLife was required to wait for Dr. Stella to offer his feedback on Dr. Kreitzer's report before reaching a final determination. MetLife alleges that it faxed a copy of the report to Dr. Stella along with a solicitation

-8-

for his review.  The fax itself is contained in the administrative record.  Medina nevertheless avers that the fax must not have ever successfully reached its intended destination.  According to Medina, any decision that did not incorporate Dr. Stella's additional feedback can only be viewed as arbitrary because MetLife must have considered that feedback to be absolutely necessary; otherwise, Medina argues, MetLife would not have attempted to solicit Stella's reaction to begin with.

The record, however, indicates that Medina was on ample notice that MetLife was trying to reach Dr. Stella.  Through multiple letters and phone calls, MetLife made clear to Medina that it was attempting to obtain more detailed information from his physician.  Dr. Stella had multiple opportunities to present evidence to rebut Dr. Kreitzer's findings.  He instead remained silent.  If, as we have already observed, an administrator is not obliged to place particular weight on the opinion of a claimant's treating physician, then we cannot see how an administrator could have an obligation to wait indefinitely for an opinion that is not forthcoming.  When the treating physician fails to respond to repeated requests for further data, the administrator is entitled to review the information available, so long as that information provides a sufficient basis to make a reasonable determination.

Such was the case here.  It was not as though MetLife lacked the benefit of Dr. Stella's observations entirely.  At the

time MetLife rendered its decision, it had reviewed Dr. Stella's progress notes dated June 4, 2006 to August 16, 2006, as well as his January 7, 2007 report. Indeed, the record indicates that Dr. Stella himself felt that there was nothing left for him to submit. Though MetLife was evidently willing to consider other information if it became available, it had the prerogative to reach a conclusion based on the existing reports from Dr. Stella and Dr. Kreitzer.

### B. Long-Term Disability Benefits

A plaintiff who wishes to raise an ERISA claim in federal court must first exhaust all administrative remedies that the fiduciary provides. Madera v. Marsh USA, Inc., 426 F.3d 56, 61 (1st Cir. 2005). The district court found that Medina had failed to do so with respect to his request for long-term disability benefits because he had never actually submitted a benefits claim for evaluation and adjudication. We review this finding of fact for clear error. Green v. ExxonMobil Corp., 470 F.3d 415, 418 (1st Cir. 2006).

Medina does not attempt to rebut the district court's conclusion with any direct evidence that he did in fact submit a long-term disability benefits claim. Instead, he asks us to infer as much circumstantially from two events described in the administrative record: (1) on June 15, 2006, Medina signed a form in which he agreed to remiburse Abbott Laboratories for any

overpayment on long-term disability benefits; and (2) in an October 26, 2006 letter to Medina, MetLife used the phrase "in reference to your long-term disability claim." Based on these two documents, Medina maintains that both his employer and MetLife "expressly recognize" that he had submitted claims for long-term disability benefits, and thus that he would have exhausted his administrative remedies.

We do not find this evidence to be persuasive. Medina consistently and conspicuously avoids any affirmative statement that he actually filed the phantom claim, trying to carry his burden purely through the words of others. Yet those words are not nearly as significant as Medina argues. The June 15 agreement appears to be a boilerplate form which includes sections for both short-term and long-term disability benefits. Nowhere does it state that Medina actually lodged a claim for long-term disability benefits specifically. As for the October 26 letter, to the extent that it suggests that a claim was filed, we think Medina's own subsequent communications prove otherwise. On July 2, 2007, Medina's attorney wrote a letter to a member of MetLife's Benefits Department in which he expressed interest "in applying and requesting benefits under the Long Term Disability (LTD) plan" and requesting "any instructions and information necessary to proceed with an application." This letter weighs heavily against Medina's circumstantial proffer. In light of this communication, along with

-11-

the complete absence in the record of any persuasive evidence that Medina ever filed the claim to which he refers, the district court did not clearly err in finding that Medina failed to exhaust his administrative remedies.

## II. Disclosure Obligations

In a separate argument, Medina contends that MetLife's failure to provide him with a copy of the fax to Dr. Stella constituted a sanctionable violation of its disclosure obligations under 29 U.S.C. § 1132(c)(1)(B). That section provides in pertinent part:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

On April 12, 2007, Medina wrote to MetLife requesting all relevant documents on which it had relied in reaching its decision to deny short-term disability benefits. He specifically asked for a copy of the fax sent to Dr. Stella, along with a confirmation page showing that the fax had successfully been transmitted. On April 25, 2007, MetLife sent Medina the entire case file. Medina's claim on appeal is that because this file did not contain the

-12-

requested transmission confirmation sheet (the fax itself was produced), MetLife is liable for sanctions under § 1132.

Medina's conclusion is a non sequitur. First, the remedy he seeks is not available for his alleged grievance. The substantive requirement that MetLife furnish requested documents after a denial of a claim is located in § 1133, which obligates insurance plans to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2); see also 29 C.F.R. § 2560.503-1(h)(2)(iii) (delineating requirements for a "full and fair review"). It is well established that a violation of § 1133 and its implementing regulations does not trigger monetary sanctions under § 1132(c). See, e.g., Wilczynski v. Lumbermens Mut. Cas. Co., 93 F.3d 397, 406 (7th Cir. 1996); Sturhlreyer v. Armco, Inc. 12 F.3d 75, 79(6th Cir. 1993); Groves v. Modified Ret. Plan, 803 F.2d 109, 117-18 (3d Cir. 1986). Sanctions are therefore unavailable here.

Second, even if sanctions were available, we see no foul that would merit them. Section 1133's implementing regulation provides:

> [T]he claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures . . . [p]rovide that a claimant shall be provided, upon request and

> free of charge, reasonable access to, and
> copies of, all documents, records, and other
> information relevant to the claimant's claim
> for benefits.

29 C.F.R. § 2560.503-1(h)(2)(iii). MetLife, which mailed the entire claim file a week after receiving Medina's request, more than sufficiently met the regulation's "reasonable access" standard. Although Medina demands a fax transmission confirmation in addition to the fax itself, there is no reason to think that such a document was ever part of the file, and its absence is not a violation.

### III. Attorney's Fees

Finally, Medina argues that the district court erred in not awarding him attorney's fees. "[W]e will disturb such rulings only if the record persuades us that the trial court indulged in a serious lapse in judgment." Twomey v. Delta Airlines Pilots Pension Plan, 328 F.3d 27, 33 (1st Cir. 2003). These awards are, of course, "normally for the prevailing party." Doe v. Travelers Ins. Co., 167 F.3d 53, 60 (1st Cir. 1999). Because we conclude that Medina does not prevail on any of his substantive claims, we affirm the district court's denial of Medina's request for fee-shifting.

**Affirmed**.