# United States Court of Appeals
## For the First Circuit

No. 18-1752

THERESA FORTIER,

Plaintiff, Appellant,

v.

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY; DARTMOUTH
HITCHCOCK CLINIC COMPANY LONG TERM DISABILITY PLAN,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Landya B. McCafferty, U.S. District Judge]

Before

Lynch, Thompson, and Barron,
Circuit Judges.

Jonathan M. Feigenbaum for Theresa Fortier.
Byrne J. Decker, with whom Scott K. Pomeroy and Ogletree,
Deakins, Nash, Smoak & Stewart, P.C. were on brief, for Hartford
Life and Accident Insurance Company and Dartmouth Hitchcock Clinic
Company Long Term Disability Plan.

February 20, 2019

**LYNCH**, **Circuit Judge**.  A disability insurer, Hartford Life and Accident Insurance Company ("Hartford"), gave notice to Theresa Fortier that the long-term disability ("LTD") benefits it had provided her under the Dartmouth Hitchcock Clinic Company Long Term Disability Plan (the "Plan") would expire because she had not shown she was eligible for a continuation of those benefits.  The notice informed her she must file any appeal within 180 days of receipt of the notice.  She did not do so, filing her appeal about two months after this deadline.

In this Employee Retirement Income Security Act of 1974 ("ERISA") suit, Fortier first argues that her appeal was timely under the Plan.  She then argues that even if untimely, that untimeliness should be excused under either of two doctrines: the ERISA substantial compliance doctrine or a state law notice-prejudice rule.  The district court rejected these arguments and granted a motion for judgment on the administrative record for Hartford and the Plan.  Fortier v. Hartford Life & Accident Ins. Co., No. 16-CV-322-LM, 2018 WL 3542863, at *12 (D.N.H. July 23, 2018).  We also reject all these arguments and affirm.  In rejecting the equitable arguments, our result is similar to that reached by the Seventh Circuit in Edwards v. Briggs & Stratton Ret. Plan, 639 F.3d 355 (7th Cir. 2011).

We describe the material undisputed facts. Because this court is not reviewing the merits of Hartford's 2013 "adverse benefit determination"[1] on Fortier's claim, facts concerning Fortier's medical condition(s) and medical treatment are described only where relevant.

A.   Illness and Initial LTD Claim

In January 2008, Fortier was employed as a doctor by the Dartmouth-Hitchcock Clinic, and so became a beneficiary and participant in an LTD benefits plan (the Plan), offered through Hartford. The Plan provided for LTD benefits if a participant became disabled. There is no dispute that Fortier became disabled in May 2009.

The Plan had limitations on the duration of LTD benefits, as relevant here, depending on the cause of the disability. One such duration limit was a twenty-four month limitation for

---

[1]   Under ERISA regulations, an "adverse benefit determination" is defined, in part, as:

> Any of the following: A denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan . . . .

29 C.F.R. § 2560.503-1(m)(4)(i).

disability caused by "Mental Illness and Substance Abuse Benefits" (the "Mental Illness Limitation"). The Mental Illness Limitation stated, in part:

> If You are Disabled because of:
>     1)  Mental Illness that results from any cause;
>     2)  any condition that may result from Mental Illness . . .
> [b]enefits will be payable:
>     1)  for as long as you are confined in a hospital or other place licensed to provide medical care for the disabling condition; or
>     2)  if not confined, or after you are discharged and still Disabled, for a total of 24 month(s) for all such disabilities during your lifetime.

The Plan defined "Mental Illness" as "a mental disorder as listed in the current version of the Diagnostic and Statistical Manual of Mental Disorders, published by the American Psychiatric Association. A Mental Illness may be caused by biological factors or result in physical symptoms or manifestations."

Under the Plan, "Mental Illness does not include the following mental disorders outlined in the Diagnostic and Statistical Manual of Mental Disorders: . . . Delirium, Dementia, and Amnesic and <u>Other Cognitive Disorders</u>" (emphasis added). It has been Fortier's position that she suffers from a "Cognitive Disorder" such that the limitation period does not apply. To be clear, Fortier was eligible for and received benefits for at least

- 4 -

twenty-four months regardless of whether the cause of her disability was a "Mental Illness" or a "Cognitive Disorder."

In November 2009, Fortier filed a disability claim with Hartford under the Plan, stating that she could not work because of a disability as of May 6, 2009.[2]  In a "Claimant Interview" with Hartford, Fortier, according to Hartford's contemporaneous notes, explained that she had "got[ten] sick with some form of infection" and subsequently had "significant problems with memory."  Fortier maintained this was corroborated by "neurophysch[ological] eval[uation]."

As part of Hartford's review of Fortier's claim, Hartford obtained medical records from several doctors who had treated Fortier.  Her psychiatrist, Dr. Paul Belliveau, stated in June 2009 that Fortier's primary diagnoses were "Major Depressive Disorder" and "Cognitive Disorder NOS [(Not Otherwise Specified)]," from "resolving encephalopathy."[3]  Her neurologist

_____

[2]  Fortier contracted a viral infection in April 2009 and reported subsequent symptoms including issues with memory and general "difficulty with various aspects of . . . cognitive function."  On May 6, 2009, Fortier stopped working due to her medical condition(s).

[3]  Fortier has referred to this condition as one caused by "encephalitis," meaning inflammation of the brain generally caused by an infection (often viral). Merriam Webster Medical Dictionary, http://www.merriam-webster.com/medical (definition of "encephalitis").  Dr. Belliveau, however, stated that the cause was "encephalopathy," which is a broader term meaning a "disease

at the time, Dr. Evan Murray, found that the results of electroencephalogram (EEG) and brain magnetic resonance imaging (MRI) tests were normal and stated that "[i]t is probable that the majority of Dr. Fortier's current cognitive difficulties are due to a mood disorder." In Dr. Murray's view, then, "both the EEG and brain MRI did not reveal evidence to support such an etiology [of encephalopathy]."

After reviewing medical records and having the "Claimant Interview" with Fortier, Hartford notified Fortier in a letter dated December 18, 2009, that it had approved her disability claim and would start paying the appropriate benefits effective November 2, 2009. This letter stated that "[o]n a periodic basis we will be providing you with supplemental claim forms for the purpose of furnishing us with continued proof of disability." When Fortier's claim was granted, a Manager at Hartford stated in Hartford's internal notes that "further clarification should be requested to determine whether Dr. Fortier's primary disabling diagnosis is due to a physical or [a] mental/nervous condition." Hartford had previously "coded" Fortier's disability claim as a physical diagnosis.

---

of the brain[,] especially: one involving alterations of brain structure." Id. (definition of "encephalopathy").

B.    2011 Adverse Benefit Determination and 2012 Appeal

        In 2010 and 2011, Hartford periodically requested updated medical information from Fortier.  In response, Dr. Belliveau stated in January 2011, on an "Attending Physician's Statement" form, that Fortier's "[c]ognitive dysfunction appears to be grad[ually] improving" and the "[p]rimary concern now is increasing depression."  In February 2010, an Examiner at Hartford spoke with Fortier on the phone and, according to Hartford's notes, Fortier declined to undergo further testing, saying that further neuropsychological tests would not make sense.  Later, Hartford requested updated medical records from Dr. Belliveau on April 8, 2011, which he provided promptly.  Dr. Belliveau's notes indicated that Fortier was "reluctant to retake the neuropsychology testing" in July 2010.  After further requests for information and communication with Fortier, an Examiner at Hartford referred the case for a medical review "for clarification of [Fortier's] disabling condition" in June 2011.  In July 2011, a nurse employed by Hartford determined that Fortier's disabling condition was a mental illness rather than a cognitive disorder or other physical ailment.  In August 2011, Hartford continued to write to Fortier's treating physicians for further information.  On September 13, 2011, Hartford determined, in its view, that an "in-depth . . . review" had "found no support for a physical [disabling condition]."

In a letter dated September 13, 2011, Hartford notified Fortier that her benefits would terminate on November 1, 2011, because the Plan's Mental Illness Limitation applied to her disability. Hartford's letter stated that "[i]f you do not agree with our denial, in whole or in part, and you wish to appeal our decision, you or your authorized representative must write to us within one hundred eighty (180) days from your receipt of this letter." About 174 days after receipt of this letter, Fortier's attorney requested a sixty-day extension to appeal the adverse benefit determination. Hartford granted this request, and the time to file an appeal was extended to May 11, 2012. Fortier, through her attorney, appealed. That appeal resulted in an extension of LTD benefits.

In a letter to Fortier's attorney dated May 22, 2012, Hartford stated that "we have determined that Dr. Fortier is entitled to continued LTD benefits beyond November 1, 2011, subject to all policy provisions and guidelines," but did not specify the reason. This deficiency was cured within two weeks. In a June 4, 2012, follow-up letter to Fortier's attorney, Hartford provided a reason for not cutting off and for continuing her LTD benefits: "As Dr. Fortier was not notified until the letter dated 09/13/2011 of the limitation for Mental Illness Benefits she is subject to the limitation beginning 09/13/2011." That is, Hartford restarted the twenty-four month period (for benefits paid due to a disability

falling under the Mental Illness Limitation) anew from September 13, 2011, because of the lack of prior notice to Fortier regarding the Mental Illness Limitation. The letter explicitly stated that "no benefits will be payable beyond 09/12/2013," except that benefits would be payable if, and for as long as, "[Fortier is] confined in a hospital or other place licensed to provided medical care for the disabling condition." This letter also sought further information from Fortier and Fortier's treating physicians.

After the June 4, 2012, letter, Hartford repeatedly requested more information about Fortier's disabling condition from Fortier, Fortier's attorney, and Fortier's healthcare providers[4] throughout the rest of 2012 and the first seven months of 2013. A June 6, 2012, letter to Fortier's attorney requested "more information to evaluate [Fortier's] claim," including an "Attending Physician's Statement of Continued Disability" from each of Fortier's treating physicians. This letter requested this information by July 9, 2012, but the record does not show that Hartford received any such information by this date. A July 13, 2012, letter referred to the June 6 letter and made the same request for "more information to evaluate [Fortier's] claim," this time by August 5, 2012. Hartford received an updated Attending

---

[4]    All of the letters sent directly to healthcare providers attached a proper authorization form, signed by Fortier, for the release of medical records and personal information.

Physician's Statement from Dr. Belliveau, dated August 16, 2012, but the record does not show the receipt of an Attending Physician's Statement from any other treating physician. An August 7, 2012, letter from Hartford requested assistance from Fortier's attorney in obtaining records from two particular hospitals where Fortier had received medical care. Nothing in the record suggests that Hartford received the requested information from the two hospitals from Fortier's attorney.

A February 15, 2013, Hartford letter to Fortier's attorney similarly requested assistance in obtaining information from a medical provider, including updated Attending Physician's Statements. Dr. Belliveau returned an Attending Physician's Statement form that stated "See attached" and was otherwise nearly blank. The attached documents were Dr. Belliveau's office notes regarding Fortier for May 2011 through November 2012. There were no records pertaining to January and February 2013. A February 18, 2013, letter to Dr. Belliveau requested a completed Attending Physician's Statement as well as "any other information you feel is pertinent to the processing of [Fortier's] claim." A March 29, 2013, letter to Fortier's attorney sought assistance in obtaining a completed form from Dr. Belliveau, rather than office notes and the "incomplete" form. There is no evidence that this information was then provided.

Hartford sent a May 10, 2013, letter to Fortier's attorney, which stated that the letter was a "final request for the information [an Attending Physician's Statement] we need to fully evaluate Dr. Fortier's claim for LTD benefits" (emphasis added). It referred to several prior letters requesting information. According to Hartford's internal records, on July 8, 2013, Dr. Belliveau sent a copy of the same incomplete form that he had previously sent in February 2013.

Even after this "final request," Hartford sent several letters in July 2013 -- one directly to Fortier, two to Fortier's healthcare providers -- seeking additional records or other pertinent information.

C.  2013 Adverse Benefit Determination

In a letter to Fortier's attorney dated July 17, 2013, and apparently sent on July 23, 2013, (the "July 17/23 letter") Hartford stated that it had "completed [its] review of [Fortier's] claim for benefits" and it would stop paying LTD benefits to Fortier on September 13, 2013, because it had determined on the record that the Mental Illness Limitation applied to Fortier. The letter stated: "If you do not agree with our denial, in whole or in part, and you wish to appeal our decision, you or your authorized representative must write to us within one hundred eighty (180) days from the receipt of this letter" and briefly

explained the appeals procedure (such as the address to which documentation should be sent).

A few weeks after this letter, on August 10, 2013, Fortier's attorney wrote to Hartford. He acknowledged notice of an adverse benefit determination and stated he had reviewed the "adverse-benefit-decision-letter"; he requested Fortier's claim file, among other things. Hartford complied with this request on August 19, 2013. Between August 2013 and March 2014, nothing in the record indicates that Fortier's attorney retracted his statement that Hartford had made an adverse benefit determination.

D.   March 2014 Appeal Letter

Fortier did not appeal within 180 days of receipt of the notice (the July 17/23 letter). Fortier, through her attorney, sent a letter dated March 7, 2014, purporting to appeal. This was about two months later than 180 days from the receipt of the July 17/23 letter. Hartford responded in a letter dated March 26, 2014, stating that it would not consider Fortier's appeal because it was untimely.[5]

---

[5]     That same day, the Harford Appeal Specialist who signed the March 26 letter spoke with Fortier's attorney on the phone. Hartford's call notes from this call state that Fortier's attorney "disagree[d] with the decision because the claimant's last payment was in September," but do not show that he offered any other excuse for filing later than 180 days after receiving the July 17/23 letter.

E. Federal Lawsuit

About two years after Fortier's attempted administrative appeal in March 2014, she filed a two-count complaint in federal district court under ERISA Section 502(a), 29 U.S.C. § 1132(a) on July 15, 2016. Count One sought reinstatement of LTD benefits, which had been terminated in accordance with the July 17/23 letter. Count Two sought attorneys' fees and costs under 29 U.S.C. § 1132(g)(1). On December 14, 2016, Fortier filed an amended complaint, adding a count challenging the legality of the Mental Illness Limitation under the Americans with Disabilities Act ("ADA").

On January 27, 2017, Hartford moved to dismiss (styled as a partial motion to dismiss), arguing that Fortier had not exhausted her administrative remedies and had not set forth a claim under the ADA; Fortier opposed this motion. On September 11, 2017, the District Court dismissed the ADA claim but not Count One regarding the denial of LTD benefits. The parties each then filed motions for judgment on the administrative record.

The district court issued a Memorandum and Opinion and entered judgment in Hartford's favor. Fortier, 2018 WL 3542863. The district court held that Fortier had not timely appealed, and so had not exhausted her administrative remedies. Id. at *11. The district court rejected Fortier's equitable arguments that her appeal was timely under either the substantial compliance doctrine

or New Hampshire's notice-prejudice rule. Id. at *8-*11. Fortier appealed from the judgment. Her appeal does not contest the dismissal of the ADA claim.

## II.

We review the district court's grant of judgment on the administrative record de novo. Glista v. Unum Life Ins. Co. of Am., 378 F.3d 113, 125 (1st Cir. 2004). We need not consider the appropriate standard of review for "reviewing determinations made regarding benefits claims," Rodríguez-López v. Triple-S Vida, Inc., 850 F.3d 14, 20 (1st Cir. 2017), because our review examines whether Fortier exhausted her administrative remedies and not the merits of Hartford's adverse benefit determination.

In order to bring suit under a benefits plan subject to ERISA, a beneficiary must exhaust the plan's administrative remedies. Tetreault v. Reliance Standard Life Ins. Co., 769 F.3d 49, 51-52 (1st Cir. 2014); see Heimeshoff v. Hartford Life & Accident Ins. Co., 571 U.S. 99, 105 (2013) (noting that "courts of appeals have uniformly required that participants exhaust internal review before bringing a claim [under ERISA] for judicial review").

We first address Fortier's arguments about the proper starting date for the 180-day time limit for appeals and about Hartford's compliance with the Plan, before considering Fortier's equitable arguments concerning the substantial compliance doctrine and New Hampshire's common law notice-prejudice rule.

- 14 -

A.    ERISA's Requirements and the 180-Day Time Limit

Fortier argues that an ERISA regulation defining an "adverse benefit determination" requires that the 180-day time limit start at the date of termination of benefits and not from the date of notice.  This argument fails.

Fortier's reading of ERISA regulations is plainly wrong. The relevant ERISA regulation does not define an "adverse benefit determination" as a "contemporary cessation of benefits," as Fortier contends.[6]  The ERISA regulation concerning notice of an adverse benefit determination states in part that a complying group health plan[7] must "[p]rovide claimants at least 180 days <u>following receipt of a notification</u> of an adverse benefit determination within which to appeal the determination."  29 C.F.R. § 2560.503-1(h)(3)(i) (emphasis added).  Notice is the key event.  The ERISA

_____

[6]    In relevant part, the regulation states that "[t]he term 'adverse benefit determination' means: (i) Any of the following: a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit."  29 C.F.R. § 2560.503-1(m)(4)(i).    Denial of benefits, termination of benefits, and reduction of benefits are listed separately by this definition, and so it would not make sense for the term "denial" to mean only the "termination" of benefits.

[7]    The parties agree that the Plan was a group health plan. Under ERISA, "[t]he term 'group health plan' means an employee welfare benefit plan providing medical care . . . to participants or beneficiaries directly or through insurance, reimbursement, or otherwise."  29 U.S.C. § 1167(1).

regulations do not require that the time limit for an administrative appeal run from the date of termination of benefits.

B.  Hartford's Conduct

Fortier also argues that: Hartford's letters from June 4, 2012, and July 17/23, 2013, were inconsistent; and a portion of Hartford's "Product Manual" (in essence, internal guidelines) shows that Hartford breached its own internal guidelines.[8]  We assume for the sake of argument that Hartford's conduct is relevant here.

These arguments fail, as Hartford's conduct was consistent with ERISA and relevant regulations.  The Plan (which is the governing document) plainly laid out the 180-day notice rule.  Specifically, the Plan's Certificate of Insurance, which was expressly incorporated as part of the Plan terms, included -- under the heading "Claim Denial: What recourse do I have if my claim is denied?" -- a clear statement that a claimant "must request a review upon written application within . . . 180 days of receipt of claim denial."  The Certificate of Insurance also

_____

[8]     Fortier makes a passing reference in the "Statement of the Relevant Facts" section of her brief to language in the Certificate of Insurance requiring that, "On any wholly or partially denied claim, you or your representative must appeal once to [Hartford] for a full and fair review." However, Fortier's point is not clear; if the implicit argument is that the latter appeal filed in March 2014 was unnecessary to exhaust Fortier's administrative remedies because she had already appealed in 2012 on the same claim, it is waived for lack of development. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

stated, under the heading "Appealing Denials of Claims for Benefits," that:

> On any wholly or partially denied claim, you or your representative must appeal once to [Hartford] for a full and fair review. You must complete this claim appeal process before you file an action in court. Your appeal request must be in writing and be received by [Hartford] no later than the expiration of 180 days from the date you received your claim denial.

This document refutes Fortier's argument. Further, the 180-day time limit complies with the relevant ERISA regulation. See 29 C.F.R. § 2560.503-1(h)(3)(i).

The July 17/23 letter from Hartford to Fortier's attorney clearly stated, "If you do not agree with our denial, in whole or in part, and you wish to appeal our decision, you or your authorized representative must write to us within one hundred eighty (180) days from the receipt of this letter." Fortier acknowledges that this letter gave notice of her appeal rights.

Fortier contrasts the June 4, 2012, and the July 17/23, 2013, letters from Hartford, arguing that "[o]ne cannot be an 'adverse benefit determination' and not the other." This argument is simply wrong and mischaracterizes the letters. The June 4, 2012, letter gave reasons for the extension of benefits discussed in the May 22, 2012, letter, but also warned of the new termination date of those benefits. The July 17/23 letter, sent more than a year later, announced the final adverse benefit determination and

gave notice of the right to appeal within 180 days of receipt of the letter.

Fortier also argues that a page from Hartford's Product Manual demonstrates that "Hartford believes a letter should be sent advising of presuit appeals rights when the claim is paid and closed, not two months before."  The language Fortier focuses on is a portion of an instruction to Hartford employees that "appeal language should again be utilized once the limited benefit duration has been paid and the claim terminated."  This page is not relevant here, and likely not admissible.[9]

---

[9]     This page from the Product Manual is not part of the administrative record in this case and was obtained by Fortier's attorney through discovery in a different and unrelated case in 2009 (which he acknowledges).  "[S]ome very good reason is needed to overcome the presumption that the record on review is limited to the record before the administrator."  Morales-Alejandro v. Med. Card Sys., Inc., 486 F.3d 693, 698 (1st Cir. 2007) (quoting Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 23 (1st Cir. 2003)).

In Glista, this court allowed the consideration of two internal insurance company documents; such internal documents "are most likely to be relevant where they have been authenticated, have been generated or adopted by the plan administrator, concern the policy in question, are timely to the issue in the case, are consistently used, and were known or should have been known by those who made the decision."  378 F.3d at 123.

Here, we do not know whether the Product Manual reflects Hartford's understanding of the Plan or its appeals procedures.  Further, there is no evidence in the record showing that Hartford used this Product Manual, or that it was or should have been known to the relevant Hartford employees.  Taken together, these facts make the Product Manual irrelevant here.

In summary, Hartford properly followed the terms of the Plan, which met the ERISA requirements. Hartford's July 17/23 letter was an adverse benefit determination and provided notice of the right to appeal. The 180-day time limit began at the receipt of this letter, and so Fortier's attempted appeal in March 2014 was untimely. In the ERISA context, "[h]aphazard waiver of time limits would increase the probability of inconsistent results." Terry v. Bayer Corp., 145 F.3d 28, 40 (1st Cir. 1998).

C.    Inapplicability of the Doctrine of Substantial Compliance

The judicially-created doctrine of "substantial compliance," an ERISA doctrine, has been applied to excuse an insurer's failure to comply precisely with ERISA's notice requirements, so long as the insured person was "supplied with a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review." Niebauer v. Crane & Co., 783 F.3d 914, 927 (1st Cir. 2015) (quoting Terry, 145 F.3d at 39); see Santana-Díaz v. Metro. Life Ins. Co., 816 F.3d 172, 178 (1st Cir. 2016).[10] In fact, the doctrine assists with the

_____

[10]    Some other circuits have applied a broader version of the doctrine to other situations under ERISA, such as an insurer's substantial compliance with a change of beneficiary. See, e.g., Davis v. Combes, 294 F.3d 931, 941-42 (7th Cir. 2002) (change of beneficiary); but see Hall v. Metro. Life Ins. Co., 750 F.3d 995, 1000-01 (8th Cir. 2014) (in a different context, rejecting the doctrine in a change of beneficiary situation). But no circuit has applied the doctrine to excuse a late administrative appeal by

prompt review of denial of benefits, and Fortier is arguing for delay, not prompt review.

Fortier makes a fairness argument: since Hartford has at least once had the doctrine applied in its favor, Fortier should receive the benefit of the doctrine. See, e.g., Topalian v. Hartford Life Ins. Co., 945 F. Supp. 2d 294, 339 (E.D.N.Y. 2013) (finding that "Hartford was in substantial compliance with the [Department of Labor]'s regulatory deadlines" despite Hartford making a late benefit determination). Neither the caselaw nor 29 C.F.R. § 2560.503-1(b)(5)[11] supports Fortier's argument.[12]

We agree generally with Edwards, where the Seventh Circuit held that the substantial compliance doctrine did not apply

---

a claimant, which is what Fortier asks that we do, and some have rejected the argument. See, e.g., Edwards, 639 F.3d at 362-63.

[11] This regulation addresses the "[o]bligation to establish and maintain reasonable claims procedures."

[12] We do not specifically address all of Fortier's broad statements concerning duties of loyalty, good faith, and fair dealing. These assertions rest on the assumption that a "desire to save money had to be the overriding force in Hartford's biased claim adjudication" and the related assumption that "Hartford's improper motive caused it to ultimately refuse to review Dr. Fortier's . . . appeal."

These assumptions are not adequately supported in Fortier's briefs, nor in the record. Fortier does not point to anything in the record that clearly suggests, let alone proves, such an improper motive. Her primary support for such a motive is the relative speed (about two weeks) in which Hartford granted Fortier's May 2012 appeal, but this does not itself demonstrate a "biased claim adjudication."

- 20 -

to a claimant's late appeal from a denial of benefits.  The Seventh

Circuit reasoned that:

> [I]t seems consistent neither with the
> policies underlying the requirement of
> exhaustion of administrative remedies in ERISA
> cases nor with judicial economy to import into
> the exhaustion requirement the substantial
> compliance doctrine.  To so hold would render
> it effectively impossible for plan
> administrators to fix and enforce
> administrative deadlines while involving
> courts incessantly in detailed, case-by-case
> determinations as to whether a given
> claimant's failure to bring a timely appeal
> from a denial of benefits should be excused or
> not.

Edwards, 639 F.3d at 362.[13]  As in Edwards, see id. at 359, the

Plan here contained a clear deadline for appeals of adverse benefit

determinations.  In coming to its conclusion, the Seventh Circuit

determined that, though the plan administrator had discretion to

consider an untimely appeal, the claimant "ha[d] never offered an

explanation for the untimeliness of her appeal that would warrant

such an exercise of discretion in her favor [by the plan

administrator]."  Id. at 362.  The same is true here.  We find

convincing the concerns about the harms that would result from

applying the substantial compliance doctrine to excuse a

claimant's failure to meet the exhaustion requirement.[14]

---

[13]    We acknowledge that there may well be ERISA cases where certain exceptions and doctrines can dictate a different outcome.

[14]    Fortier has not made an equitable tolling argument.

Further, the Supreme Court has discussed ERISA's "'careful balancing' between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." Aetna Health Inc. v. Davila, 542 U.S. 200, 215 (2004) (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987)); see also Heimeshoff, 571 U.S. at 108 (noting that a "focus on the written terms of the plan is the linchpin of" the ERISA system). Adoption of Fortier's argument would risk upsetting this balance and reducing the incentive for employers to set up benefit plans.

Next, Fortier's reliance on 29 C.F.R. § 2560.503-1(b)(5) is fundamentally misconceived. Nothing in the regulation would be "undermined by Hartford when it applies deadlines strictly against plan participants." In fact, "ERISA's exhaustion requirement serves different purposes than the denial of claims process," Fortier, 2018 WL 3542863, at *10, and so all aspects of such processes need not be the same.

The substantial compliance doctrine does not excuse Fortier's untimely ERISA administrative appeal.[15]

---

[15] Fortier makes no argument that we should excuse her failure to exhaust the available administrative remedies. See, e.g., Medina v. Metro. Life Ins. Co., 588 F.3d 41, 47 (1st Cir. 2009); Madera v. Marsh USA, Inc., 426 F.3d 56, 62-63 (1st Cir. 2005); Turner v. Fallono Cmty. Health Plan, Inc., 127 F.3d 196, 200 (1st Cir. 1997); Drinkwater v. Metro. Life Ins. Co., 846 F.2d 821, 826 (1st Cir. 1988).

D.    Inapplicability of New Hampshire's Notice-Prejudice Rule

Fortier argues next that New Hampshire's common law notice-prejudice rule (where an insurer must show prejudice in order to deny certain limited types of untimely insurance claims) should apply to her situation.  Our own case law leads us to reject the argument, as do decisions of our sister circuits.  See Edwards, 639 F.3d at 363; Chang v. Liberty Life Assurance Co., 247 F. App'x 875, 878 (9th Cir. 2007).

This court, discussing ERISA appeals procedures and the exhaustion requirement, has stated that:

> Congress' apparent intent in mandating these internal claims procedures was to minimize the number of frivolous ERISA lawsuits; promote the consistent treatment of benefit claims; provide a nonadversarial dispute resolution process; and decrease the cost and time of claims settlement.  It would be anomalous if the same reasons which led Congress to require plans to provide remedies for ERISA claimants did not lead courts to see that those remedies are regularly utilized.

Terry, 145 F.3d at 40 (quoting Makar v. Health Care Corp. of the Mid-Atlantic (CareFirst), 872 F.2d 80, 83 (4th Cir. 1989)); accord Schorsch v. Reliance Standard Life Ins. Co., 693 F.3d 734, 739 (7th Cir. 2012); Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993).  This court stated further in Terry that "[i]t would hardly make sense to permit the filing of [a late] appeal . . . in light of the internal claims procedures' aims of consistency and economy."  Terry, 145 F.3d at 40.  Adopting

Fortier's argument would reduce consistency in determinations and national consistency. Further, "permitting appeals well after the time for them has passed can only increase the cost and time of the settlement process." Id. The exhaustion requirement -- and several of its underlying policy goals -- would be undercut by an extension of a state law notice-prejudice rule to ERISA appeals. See Stacy v. Appalachian Regional Healthcare, Inc., 259 F. Supp. 3d 644, 654 (E.D. Ky. 2017).

The Seventh and Ninth Circuits have agreed that state common law notice-prejudice rules do not apply to ERISA appeals. See Edwards, 639 F.3d at 363; Chang, 247 F. App'x at 878. Indeed, no federal court has applied any state's common law notice-prejudice rule to excuse a late administrative ERISA appeal.[16]

---

[16] The District Court for the Eastern District of Pennsylvania suggested in dictum that an untimely ERISA appeal would have been subject to the notice-prejudice rule. Foley v. Int'l Bhd. of Elec. Workers Local Union 98 Pension Fund, 91 F. Supp. 2d 797, 803 n.6 (E.D. Pa. 2000) ("Even if [the plaintiff's] appeal were untimely, defendants would not prevail, because they have not shown that they were prejudiced by the untimely submission, as they are required to do under the Supreme Court's recent decision in UNUM.")

This footnote appears to rest on a misunderstanding of UNUM Life Ins. Co. v. Ward, 526 U.S. 358 (1999), though, and is not a holding. UNUM focused on California's relatively broad notice-prejudice rule and on California's specific policy interests underlying this rule; it still did not extend California's notice-prejudice rule to an ERISA appeal. See id. at 372-73. Further, it made no express holding about other states' notice-prejudice rules, see generally id., and simply noted that "[d]ecisions of courts in [some] other States . . . indicate that the notice-prejudice rule addresses policy concerns specific to

See, e.g., Chang, 247 F. App'x at 878 ("[T]o extend the notice-prejudice rule to ERISA appeals would extend the rule substantially beyond its previous uses.").

We add that New Hampshire has never suggested that its notice-prejudice rule applies to ERISA appeals, and note that the state has only applied the doctrine where the facts involve an initial claim made in an occurrence-based insurance policy.[17] See, e.g., Bianco Prof'l Ass'n v. Home Ins. Co., 740 A.2d 1051, 1057 (N.H. 1999). There is no reason to think that the New Hampshire courts would countenance Fortier's attempted use of the notice-prejudice rule.

III.

For the stated reasons, the decision of the district court is affirmed. Costs are awarded to Hartford.

---

insurance," id. at 372. Indeed, the court acknowledged "States' varying insurance regulations." Id. at 376 n.6.

    [17] Fortier also cites a New Hampshire law in support of her argument that an initial claim should be treated the same as an appeal under New Hampshire's notice-prejudice rule. This law, titled "Unfair Methods, Acts, and Practices Defined," bars insurers from "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements or compromises of claims in which liability has become reasonably clear." N.H. Rev. Stat. Ann. § 417:4(XV)(a)(4). This provision is inapposite: Liability was not reasonably clear, and the record does not demonstrate bad faith on the part of Hartford.